**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| YUYAMA MANUFACTURING CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 08 cv 2523 |
| | ) | |
| JVM CO., LTD, | ) | Judge Kennelly |
| | ) | |
| Defendant, | ) | Magistrate Cole |

**JVM'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO ENFORCE SUBPOENAS**

JVM Co., Ltd. (JVM") by and through its attorneys presents this memorandum in support of its Motion to Enforce Subpoenas.

**INTRODUCTION**

JVM is the defendant in a patent infringement case pending in the U.S. District Court of the District of Maryland entitled *Yuyama Manufacturing Co., Ltd. v. JVM Co. Ltd.*, MSJ 06 cv 2536. As part of the patent case JVM issued and served three subpoenas on two non-parties: Automed Technologies, Inc. ("Automed") and Duane Chudy ("Chudy"). Automed is the primary U.S. distributor for Plaintiff Yuyama Manufacturing Co., Ltd. in the patent infringement action, and Duane Chudy ("Chudy"), is the former President and owner of Automed.

JVM served two subpoenas on Automed. The first subpoena is dated May 23, 2007 and requests Automed to produce certain documents. See Exhibit B to the attached Declaration of Chong H. Roh ("Roh Decl."). The Second subpoena is dated March 26, 2008, and requests the deposition of a witness from Automed. See Roh Decl. Exhibit C. JVM seeks a court order regarding the first subpoena directing Automed to provide access by JVM to Automed's archived document records for inspection and copying by JVM's counsel or, alternatively, for

Automed to search for and produce the requested documents at its own expense. JVM also seeks a court order for Automed to produce a witness or witnesses under F.R.Civ.P. 30(b)(6), pursuant to the second subpoena, instead of merely providing answers to a deposition on written questions, as Automed insists.

JVM also served a subpoena dated April 3, 2008 on Mr. Chudy. See Roh Decl. Exhibit D. JVM requests an order requiring Mr. Chudy to appear for his subpoenaed deposition.

The attorneys for the relevant parties have met and conferred regarding the issues related to this motion under Local Rule 37.2, and the issues raised by this motion are the only ones that remain.

## ISSUES RAISED

Two subpoenas were served on Automed, one was a document subpoena and the other was a deposition subpoena pursuant to F.R.Civ.P. 30(b)(6). *See* Roh Decl., Exhibits B and C. Automed has its own independent counsel for this matter. The attorneys for JVM and Automed have exchanged several letters and met and conferred by telephone. See attached Declaration of Mark L. Sutton ("Sutton Decl."), ¶ 2. As a result of these efforts, the parties have substantially narrowed the issues. Sutton Decl. ¶ 4. Automed has produced some responsive records that were electronically recorded and is willing to produce other electronically recorded information that is responsive to the subpoena. Sutton Decl. ¶ 4. In addition, the parties have agreed that the information produced will be subject to a protective order issued in the underlying action. Sutton Decl. ¶ 5. However, there are three remaining issues that are unresolved and they are as follows:

1.     Automed has refused to produce responsive paper records that it has archived in a warehouse unless JVM pays Automed's attorneys fees and other expenses to search, copy and

produce those records.  Automed has refused JVM's offer to incur the expenses itself by having JVM's attorneys and staff search and copy the responsive paper records.  JVM further proposed that any information uncovered would be subject to a confidentiality protective order and would be reviewed only by JVM's outside attorneys and their staff.  Sutton Decl. Exhibits L and M.  By this motion, JVM requests an order from the Court requiring Automed to permit JVM to incur the expenses itself as JVM has proposed or, in the alternative, for Automed to search and produce the responsive documents at its own expense.

2.      Automed has refused to produce a witness for an oral deposition pursuant to F.R.Civ.P. 30(b)(6).  Instead, Automed argues that JVM should be limited to a deposition on written questions or an affidavit from Automed.  Sutton Decl. Exhibits K, L and M.  JVM has noticed an oral deposition in order to allow for questions concerning information not contained the documents produced by Automed, and to allow for follow-up questions to clarify answers given by Automed concerning produced documents.  Thus, JVM seeks an order requiring Automed to produce a witness for an oral deposition pursuant to the subpoena.

3.      A subpoena was served on Duane Chudy, the former President and owner of Automed during most of the time period related to this action.  See Roh Decl. Exhibit D.  Mr. Chudy is represented by counsel for Plaintiff Yuyama in the underlying action.  Mr. Chudy's counsel has informed JVM's counsel that there are no documents in Mr. Chudy's possession responsive to JVM's subpoena.  Therefore, the only issue with respect to Mr. Chudy is whether Mr. Chudy will appear for his noticed deposition.

Mr. Chudy initially refused to appear on the ground that he has no knowledge relevant to the lawsuit.  In view of Mr. Chudy's status as the former President and owner of the primary U.S. distributor for Yuyama's products, the assertion of the lack of knowledge by Mr. Chudy is

not credible.  In any event, Mr. Chudy's lack of knowledge of the patented tablet feeders would itself be relevant in the underlying lawsuit to issues such as damages and validity of the patent.

A meet and confer regarding Mr. Chudy's deposition was held on April 30, 2008.  Sutton Decl. ¶ 6.  At the meet and confer the parties tentatively agreed that, if the Automed deposition goes forward, the deposition of Mr. Chudy will go forward in the Chicago area on the same day or the day following the oral deposition of Automed's witness.  That agreement has been confirmed.  However, if the Automed deposition does not go forward, there is no agreement for Mr. Chudy to give his deposition.  Therefore, if this Court orders the deposition of Automed, this motion against Mr. Chudy would be moot.  However, if the Court does not order Automed to appear for an oral deposition (but instead only answer a deposition on written questions), JVM requests this Court to order Mr. Chudy to appear for his deposition.

**I.     JVM's Proposal Satisfies the Requirements of F.R.Civ.P. 45 Regarding the Costs Incurred by Automed to Comply with the Document Subpoena.**

Regarding the subpoena requesting documents from Automed, Federal Rule of Civil Procedure 45 provides, in pertinent part, as follows:

(c) Protecting a Person Subject to a Subpoena.

(1) *Avoiding Undue Burden or Expense; Sanctions.*   **A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.** The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
**...**

 (B) *Objections.*  A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises--or to producing electronically

stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(I) At any time, on notice to the commanded person, **the serving party may move the issuing court for an order compelling production or inspection.**

(ii) These acts may be required only as directed in the order, and **the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.**

F.R.Civ.P. 45(c).

"A non-party can be required to bear some or all of its expenses where the equities of a particular case demand it." *In re Honeywell Int'l, Inc. Securities Litigation*, 230 F.R.D. 293, 302-03 (S.D.N.Y. 2003).

There is no "undue burden or expense" that Automed would incur if Automed had to search, copy and produce the documents in its archived files. As an entity with a substantial stake in the outcome of this lawsuit, Automed should be required to incur the reasonable expense of searching its own business records. *Behrend v. Comcast Corp.,* 248 F.R.D. 84, 87 (D. Mass. 2008) (granting motion to compel production of documents without payment of non-party's expenses when "it is clear that Greater Media has an interest in the outcome of this litigation. Greater Media was involved in a transaction with Comcast and could have anticipated such a transaction could potentially spawn litigation or discovery"); *In re Seroquel Products Liability Litigation*, 2007 WL 4287676, *4-*5 (M.D. Fla. 2007) (granting motion to compel without requiring payment of expenses concerning "retrieval and review [of documents] (including attorneys' fees)" because "it should come as no surprise to Harris that market research work it did for Seroquel would be relevant to Plaintiffs' claims and Harris should have reasonably

anticipated being involved in the discovery process of subsequent litigation concerning the marketing/prescribing behavior it studied for Seroquel").

Here, Automed is the primary U.S. distributor of the pharmaceutical tablet dispensing and packaging products that Yuyama has alleged are covered by the patent in the underlying case. Roh Decl., ¶ 6. Therefore, Automed stands to greatly benefit from the underlying lawsuit if Yuyama obtains an injunction against JVM and should have reasonably anticipated being involved in the discovery process. This substantial interest in the outcome of this case is a strong factor for granting this motion.

Other factors include the financial ability of the non-party to bear the cost of the discovery expense and whether the underlying litigation is of "public importance." *Behrend*, 248 F.R.D. at 86 ( "[I]n determining the cost allocation, courts consider three factors: (1) whether the non-party actually has an interest in the outcome of the case, (2) whether the non-party can more readily bear the costs than the requesting party, and (3) whether the litigation is of public importance."); *accord Seroquel*, 2007 WL 4287676 at *3 (citing *Honeywell, supra*):

> "In order to determine whether a nonparty to the suit should bear the costs of gathering and copying documents, courts should consider whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party and whether the litigation is of public importance."

Here, Automed's products dispense 750,000 pharmaceutical prescriptions per day. Moreover, Automed is a division of Amerisource-Bergen, which has more than $54 billion in annual revenue and 13,000 employees. Sutton Decl., ¶ 9. JVM, on the other hand, is a much smaller, privately held company with less than $50 million in annual sales. Sutton Decl., ¶ 10.

Furthermore, U.S. patents, and whether a patent should not be enforced to prevent it from stifling competition because it is invalid, are issues of substantial public importance. Moreover, the invention here involves pharmaceutical tablet dispensing which performs a very important public purpose concerning persons who need medical treatment. Therefore, all three factors here favor denying Automed's demand for payment of its expenses.

In any event, as explained above, by offering to incur the expense to search for the requested documents, JVM has clearly taken "reasonable steps to avoid imposing undue burden of expense" on Automed. Therefore, even if Automed could show that it should be protected from incurring the expenses itself, JVM's proposal resolves that issue. *See Behrend* 248 FRD 84 (granting motion to compel against non-party when the subpoenaing party offered to conduct search and copying of records itself).

In view of the foregoing, this Court should grant JVM's motion.

## II.     Automed Should Have to Produce a Witness for an Oral Deposition.

As explained above, Automed insists on a deposition on written questions rather than an oral deposition. The propounding party in discovery makes the choice of various discovery procedures in the first instance, not the responding party.

Moreover, oral depositions are favored over depositions on written questions because, *inter alia*, "proceeding on written interrogatories denies [the propounding party's] … counsel the opportunity to ask follow-up questions, observe the witness's demeanor, or evaluate his credibility." *P.H. Int'l Trading Co. v. Christia Confezioni S.P.A.,* 2004 WL 2538299, at *1 (N.D. Ill. 2004) ("Although a deposition on written interrogatories is appropriate in certain limited circumstances, the court finds it is not an adequate substitute for an oral deposition in this case. … Christia has failed to persuade the court that presenting Mr. Sorio for deposition

would create a substantial hardship for Mr. Sorio or Christia."); *see also Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 397 (S.D.N.Y. 2006):

> The proposal that the non-IIED plaintiffs be subject to deposition upon written questions is without merit. Written questions are rarely an adequate substitute for oral depositions both because it is difficult to pose follow-up questions and because the involvement of counsel in the drafting process prevents the spontaneity of direct interrogation. Accordingly, depositions upon written questions are disfavored. … Here, the plaintiffs have proffered no persuasive reason why the presumption in favor of oral depositions should be disregarded.

In addition to the reasons set forth in *P.H. Int'l* and *Zito*, here it is likely that JVM will be seeking information that is not contained in documents, and so a deposition on written questions would be insufficient to permit follow up questions based on potentially unknown information that is uncovered at the deposition.  Sutton Decl., ¶ 11.

Here, Automed has likewise failed to show why this case is the exception where a deposition on written questions is necessary to avoid unduly burdensome costs to the responding party.  In fact, depositions on written questions are not much more cost effective than an oral deposition, especially for the responding party. *See Lopez v. Horel*, 2007 WL 2177460 *2 n.2 (N.D. Cal. July 2007).  The Court should note that JVM intends to take the deposition in the Chicago area in proximity to Automed's place of business.  See Roh Decl. Exhibit C. Accordingly, oral deposition of Automed should go forward as noticed.

**III.    Mr. Chudy Should Be Ordered to Appear for His Deposition.**

Mr. Chudy, the former President and owner of Automed, is represented by counsel for Yuyama.  Sutton Decl., ¶ 6.  Mr. Chudy initially resisted the taking of his deposition at all. However, at the meet and confer for this motion, Mr. Chudy's counsel said that Mr. Chudy was

willing to submit to his deposition in the Chicago area during the same time period as any Automed deposition.  See Sutton Decl., ¶ 7.

In view of the foregoing, the Court need not issue an order on this motion if Automed is ordered to appear for its oral deposition because Mr. Chudy has agreed that he would appear for his deposition following the deposition of Automed.  However, in the event Automed is not ordered to appear for its deposition, JVM requests that the Court order Mr. Chudy to appear for his deposition in the Chicago area, or if Mr. Chudy so desires, at a location near Mr. Chudy's counsel's office in Washington D.C.

For the reasons stated herein and in the Motion to Enforce Subpoenas, JVM requests that this Court enter an order compelling Automed and Duane Chudy to comply with the subpoenas served upon them.

Respectfully submitted,

**JVM CO., LTD**

s/ Ronald Austin, Jr.
One of Its Attorneys

Ronald Austin, Jr.
**BROTHERS & THOMPSON, P.C.**
100 West Monroe Street, Suite 1700
Chicago, Illinois 60603
P: (312) 372-2909
F: (312) 704-6693
ra2law@cs.com

## CERTIFICATE OF SERVICE

The undersigned certifies that he caused the foregoing to be served on counsel listed below via U.S. Mail, postage prepaid, this 5th day of May, 2008.

Tortsten M Kracht
Michael A. O'Shea
Akin Gump Strauss Hauer and Feld LLP
1333 New Hampshire Ave NW
Washington, DC 20036
*Counsel for Yuyama Manufacturing Co. Ltd. and Duane Chudy*

John D. Simmons
Panitch Schwarze Belisario & Nadel LLP
2005 Market St., Suite 2200
Philadelphia, PA 19103
*Counsel for Yuyama Manufacturing Co. Ltd. and Duane Chudy*

Steven Bizar
Christopher M. Hapka
Buchanan Ingersoll & Rooney, P.C.
1835 Market Street, 14th Floor
Philadelphia, PA 19103
*Counsel for Automed Technologies Inc.*

s/Ronald Austin, Jr.

Ronald Austin, Jr.
**BROTHERS & THOMPSON, P.C.**
100 West Monroe Street, Suite 1700
Chicago, Illinois 60603
P: 312-372-2909
F: 312-704-6693
ra2law@cs.com

## DECLARATION OF CHONG H. ROH

I, Chong H. Roh, declare:

1.      I am an attorney licensed to practice in the State of California. I am a member of Park Law Firm, attorneys for Defendant JVM Co., Ltd. ("JVM").

2.      This motion to compel regarding AutoMed Technologies; Inc. ("AutoMed") and Duane Chudy ("Chudy") relates to an underlying action now pending in the U.S. District Court for the District of Maryland designated as Yuyama Manufacturing Co., Ltd. v. JVM Co., Ltd., case no. MJG06CV2536 ("underlying case").

3.      The underlying case is a patent infringement case. A true and correct copy of the only patent in suit is attached here to as Exhibit A.

4.      There have been two subpoenas served on AutoMed in the underlying case. True and correct copies of those subpoenas are attached hereto as Exhibits B and C.

5.      One subpoena was served on Mr. Chudy. A true and correct copy of that subpoena is attached hereto as Exhibit D.

6.      It is my understanding from sources in the tablet feeder machine industry that AutoMed, the party subject to two subpoenas served by JVM, is the primary distributor of the Yuyama tablet feeder machines that are allegedly covered by the patent in the underlying action.

7.      It is my understanding from sources in the tablet feeder machine industry that Mr. Chudy was the President and owner of AutoMed during the 1990s and the early 2000s. I have also learned from sources in the tablet feeder machine industry that Mr. Chudy is one of the most knowledgeable people in that industry about various aspects and types of tablet feeder machines.

        I declare under penalty of perjury that the foregoing is true and correct, and if called upon as a witness, I could testify thereto, and I have personal knowledge of the foregoing facts.

Executed this 1st day of May, 2008 at Dallas, Texas

Chong Roh

EXHIBIT A



US005803309A

# United States Patent [19]

## Yuyama et al.

[11] **Patent Number:** 5,803,309

[45] **Date of Patent:** Sep. 8, 1998

[54] **TABLET FEEDER**

[75] Inventors: **Shoji Yuyama; Itsuo Yasunaga; Naoki Koike**, all of Toyonaka, Japan

[73] Assignee: **Yuyama Mfg. Co., Ltd.,** Osaka-fu, Japan

[21] Appl. No.: **767,063**

[22] Filed: **Dec. 16, 1996**

[51] **Int. Cl.**⁶ ..................................................... **G07F 11/00**
[52] **U.S. Cl.** ............................................. **221/82;** 221/277
[58] **Field of Search** ................................. 221/2, 7, 9, 15, 221/69, 82, 186, 258, 277

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 3,722,740 | 3/1973 | List | ............................................. 221/7 |
| 4,869,394 | 9/1989 | Hurst | ........................................... 221/7 |

FOREIGN PATENT DOCUMENTS

2-205523   8/1990   Japan .

*Primary Examiner*—Kenneth Noland
*Attorney, Agent, or Firm*—Wenderoth, Lind & Ponack, L.L.P.

[57] **ABSTRACT**

A tablet feeder has a partitioning member that allows tablets to be separated properly without causing any faults such as cracking in the pockets of the tablet array board. Tablets A accommodated in the tablet accommodating portion **2** are retained one by one into the pockets of the tablet array board **8**, divided into two by the partitioning member **14**, and thereafter discharged out at a discharge position. The partitioning member **14** has its partitioning portion **15** made up from a plurality of elastic bristles **17** in a comb-like shape.

**4 Claims, 5 Drawing Sheets**



*F i g . 1*



*F i g . 2*



*F i g . 3 A*



*F i g . 3 B*



*F i g . 4*



*Fig. 5*



2

8

12

14



A

*Fig. 6*



17

15

14     16

*F i g . 7*





*Fig. 8*
*PRIOR ART*



*Fig. 9*
*PRIOR ART*

5,803,309

# 1
# TABLET FEEDER

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates to a tablet feeder and, in particular to a tablet feeder featuring a partitioning member that partitions a pocket of the tablet array board into upper and lower two divisions.

### 2. Description of the Prior Art

Conventionally, the tablet feeder is so arranged that a tablet accommodating section in which a plurality of tablets are accommodated is mounted on a motor base in which a motor is housed, and that the tablet array board disposed in the tablet accommodating section is rotated by the motor so that the tablet can be discharged outside (for example, refer to Japanese Patent Laid-Open Publication No. HEI 2-205523). In more detail, referring to FIGS. 8 and 9, on the outer periphery of the tablet array board 21 accommodated in the tablet accommodating section 20, a plurality of pockets 22 are defined so as to be recessed along the direction of the rotational axis at specified intervals, so that tablets A in the tablet accommodating section 20 are fed one by one to the pockets 22. The pockets 22 are each partitioned into upper and lower two divisions by a partitioning member 23 at a specified position as the tablet array board 21 rotates. Thus, it is enabled to discharge out only the lower side one of the tablets A retained in the pocket 22 through a tablet discharge hole 24.

However, in the conventional tablet feeder, the partitioning member 23 is made of a metal thin plate, and disposed at a portion of the outer periphery of the tablet array board 21. For this reason, although there occurs no problem if the tablets A in the pockets 22 are arrayed properly as shown in FIG. 8, yet there are some cases where the tablets A, if they have caught halfway, are not partitioned well into upper and lower divisions by the partitioning member 23 as shown in FIG. 9. That is, because the partitioning member 23 will go beyond the caught tablet A, the tablet A may be sandwiched between the partitioning member 23 and the tablet array board 21 so that the tablet A may be damaged or chipped, or in some cases, that the partitioning member 23 may be deformed. This would cause a problem that the tablets A could not be discharged properly through the tablet discharge hole 24, disadvantageously.

## SUMMARY OF THE INVENTION

The present invention has been developed to substantially eliminate the above-described disadvantages.

It is an object of the present invention to provide a tablet feeder equipped with a partitioning member that allows tablets to be separated properly without causing any faults such as cracking in the pockets of the tablet array board.

In order to achieve the aforementioned object, there is provided a tablet feeder comprising: a tablet accommodating section capable of accommodating a multiplicity of tablets; a tablet array board which is disposed in the tablet accommodating section and which, while being driven and rotated, retains the tablets one by one in pockets defined on an outer periphery thereof and discharges them at a discharge position; and a partitioning member whose partitioning portion located at each of the pockets of the tablet array board partitions the pocket into upper and lower two divisions, thereby restricting a number of tablets to be discharged, wherein the partitioning portion of the partitioning member comprises a plurality of elastic bristles formed into a comb

# 2

shape. Preferably, the elastic bristles constituting the partitioning member are each tilted toward a downstream side of rotational direction of the tablet array board. Also, more preferably, the elastic bristles constituting the partitioning member have their cross section formed into a generally oval shape, and its minor axis is directed along the rotational direction of the tablet array board.

In the tablet feeder with the above constitution, as the tablet array board rotates, the tablets accommodated in the tablet accommodating section are retained in the pockets of the tablet array board one by one, and thereafter partitioned into upper and lower two divisions at a specified position by the partitioning portion of the partitioning member. The partitioning portion is made up from a plurality of elastic bristles formed into a comb shape, and the elastic bristles will be bent one by one when coming into contact with the tablets, gradually increasing their press-contact force so that the tablets in the pocket are divided into upper and lower two divisions smoothly. As a result, only the tablet on the lower side of the division is discharged out from the tablet accommodating section.

## BRIEF DESCRIPTION OF THE DRAWINGS

Further objects and advantages of the present invention will become clear from the following description taken in conjunction with the preferred embodiments thereof with reference to the accompanying drawings, in which:

FIG. 1 is a sectional view of a tablet feeder according to the present invention;

FIG. 2 is an enlarged partial bottom view of tablet accommodating section of FIG. 1;

FIG. 3A is a perspective view of the partitioning member to be used in the tablet feeder of FIG. 1;

FIG. 3B is a view in the direction of the arrow X in FIG. 3A;

FIG. 4 is a perspective view showing a state in which the tablet located in a pocket of the tablet array board of FIG. 1 is partitioned into two divisions by the partitioning member;

FIG. 5 is a front view showing a tablet feeder of another arrangement;

FIG. 6 is a perspective view of the partitioning member to be used in the tablet feeder of FIG. 5;

FIG. 7 is a perspective view showing a tablet feeder of yet another arrangement;

FIG. 8 is a partly enlarged view showing a state in which tablets are accommodated in regular position in a pocket of the tablet array board in a tablet feeder according to the prior art; and

FIG. 9 is a partly enlarged view showing a state in which a tablet has caught in a pocket of the tablet array board in a tablet feeder according to the prior art.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

FIG. 1 shows a tablet feeder according to the present invention. This tablet feeder generally comprises a motor base 1, and a tablet accommodating section 2 provided above the motor base 1. In the motor base 1, a motor 3 is contained and a discharge path 4 for discharging tablets A out is provided on back side. The tablet accommodating section 2 has a bottom surface formed into a generally conical shape with the cross sectional area gradually decreasing downward, and a cylindrical boss 5 is provided in the center of the bottom surface so as to protrude upward.

5,803,309

**3**

In proximity to the outer periphery of the boss **5**, a tablet discharge hole **6** is bored so as to communicate with the discharge path **4**. This tablet discharge hole **6** has at least such a size that one of the tablets A accommodated in pockets **12** of the tablet array board **8** as described below are allowed to drop. Also, the accommodating section **2** has slits **7** formed by the upper inner edge of the tablet discharge hole **6** being cut out circumferentially, as shown in FIG. **2**.

In the center of the bottom surface of the tablet accommodating section **2**, a tablet array board **8** is disposed rotatably about the boss **5**. The tablet array board **8** has a circular shape, its lower surface being formed into a generally conical shape that corresponds to the shape of the bottom surface of the tablet accommodating section **2** and its upper surface being swollen also into a conical shape. In the center of the lower surface of the tablet array board **8**, a swivel **9** which fits to the boss **5** is protrudingly provided. A gear **10** attached at the lower end of the swivel **9** is engaged with an unshown gear provided to a rotating shaft **11** of the motor **3**, by which rotating force of the motor **3** is transferred to the tablet array board **8**. On the lower surface of the tablet array board **8**, a plurality of pockets **12** are formed at equal angles to the circumferential direction, each pocket **12** having such a size that two pieces of tablets A arrayed longitudinally one by one can be accommodated therein. Between adjacent pockets **12**, a thin-width recess **13** is defined circumferentially on a site corresponding to an intermediate position of the tablets A accommodated in each pocket **12**.

On the bottom outer surface of the tablet accommodating section **2**, a partitioning member **14** is fixed. This partitioning member **14** is made of a synthetic resin material such as polyacetal, and comprises a partitioning portion **15** and a fixing portion **16** as shown in FIGS. **2** and **3**A. The partitioning portion **15** is formed from a plurality of elastic bristles **17** tilted toward the front end (downstream in the rotational direction of the tablet array board **8**) and projects in a comb-like shape. The partitioning portion **15** is projecting into the tablet accommodating section **2** via the slits **7** defined in the bottom surface of the tablet accommodating section **2** so that a pocket **12** of the tablet array board **8** is divided into upper and lower two divisions. The elastic bristles **17** each have a cross section formed into a generally oval shape as shown in FIG. **3**B, and are arrayed along its minor axis. Thus, with the partitioning member **14** mounted to the tablet accommodating section **2**, the elastic bristles **17** will easily be elastically deformed only along the direction of the minor axis, i.e., toward the downstream of the rotational direction of the tablet array board **8**.

The tablet feeder with the constitution described above is used to take out the tablets A accommodated in the tablet accommodating section **2** one by one (one in this embodiment, but **2** or more possible). More specifically, the tablets A accommodated in the tablet accommodating section **2** are retained in each of the pockets **12** of the tablet array board **8** in such a state that two tablets A are arrayed and directed downward. In this state, with the tablet array board **8** rotated, the partitioning portion **15** of the partitioning member **14** enters between the two tablets A, A of each pocket **12** along with the rotation. The partitioning portion **15** is composed of a plurality of elastic bristles **17** projecting obliquely, and each elastic bristle **17** is projecting obliquely toward the downstream of the rotational direction of the tablet array board **8**. Therefore, the intermediate portion of elastic bristles **17** located most upstream of the rotational direction of the tablet array board **8** first makes contact with a tablet A. The elastic bristles **17**, which are all projecting in

**4**

the same direction, are gradually bent under press contact with the tablet A as the tablet array board **8** rotates, thus being elastically deformed smoothly, as shown in FIG. **4**. In this way, increasing numbers of elastic bristles **17** come to be elastically deformed, so that the pressing force to the tablets A increases gradually, by which the tablets A within the pockets **12** are divided into upper and lower divisions without any difficulty. Accordingly, there will never occur flaws or cracks to the tablets A. Also, even if a tablet A has caught halfway of the pocket **12** (see FIG. **9**) such that the partitioning portion **15** of the partitioning member **14** passes the intermediate portion of the tablet A, the elastic bristles **17** will be elastically deformed so that flaws or cracks will never occur to the tablet A, and that the partitioning member **14** will never lead to breakage.

The above embodiment has been described on a case in which the partitioning member **14** according to the present invention is applied to a tablet feeder having pockets **12** defined in the lower surface of the conical tablet array board **8**. However, it may also be applied, of course, to such tablet feeders as shown in FIGS. **5** and **7**.

In the tablet feeder as shown in FIG. **5**, a columnar tablet array board **8** is rotatably accommodated in a cylindrical tablet accommodating section **2**, and a plurality of pockets **12** are defined on the cylindrical surface of the tablet array board **8**. The partitioning member **14** is implemented by one having an arrangement as shown in FIG. **6**. In this partitioning member **14**, the elastic bristles **17** are formed at their tip in an arc shape along the outer circumferential cylindrical surface of the tablet array board **8**. Whereas the tablets A are arrayed in a line along the vertical direction within the pockets **12**, they can be divided into two by using the partitioning member **14** without causing flaws or cracks to the tablets A as in the foregoing embodiment, where the partitioning member **14** itself also will never lead to breakage.

In the tablet feeder as shown in FIG. **7**, a columnar tablet array board **8** is rotatably accommodated in a cylindrical tablet accommodating section **2**, and has at its top end a tilted surface **8**a, where a pocket **12** is provided only at one place, the lowermost place of the tilted surface **8**a. Tablets A accommodated in the tablet accommodating section **2** are introduced to the pocket **12** by the tilted surface **8**a, and thereafter, upon reaching a discharge position, they are divided into upper and lower two divisions by the partitioning member **14**. This tablet feeder also can produce the same effects as the foregoing embodiments by virtue of the partitioning member **14**.

As apparent from the foregoing description, with the tablet feeder according to the present invention, since the partitioning portion is made up from a plurality of elastic bristles, the partitioning portion, after once bent under contact with the tablets, can divide the tablets into upper and lower two divisions without any difficulty. Accordingly, there is no possibility that the tablets may be damaged, chipped, or cracked, as would occur conventionally. Even if a tablet has caught halfway of the pocket, the partitioning portion itself will never lead to breakage. In particular, when the elastic bristles are tilted toward the downstream of the rotational direction of the tablet array board, or when the elastic bristles are each formed into a generally oval shape with its minor axis directed along the rotational direction of the tablet array board, the elastic bristles will make contact with the tablets and be elastically deformed smoothly in a certain direction, so that the tablets can be separated more appropriately.

Although the present invention has been fully described by way of the examples with reference to the accompanying

5,803,309

**5**

drawing, it is to be noted here that various changes and modifications will be apparent to those skilled in the art. Therefore, unless such changes and modifications otherwise depart from the spirit and scope of the present invention, they should be construed as being include therein.

What is claimed is:

1. A tablet feeder comprising: a tablet accommodating section capable of accommodating a multiplicity of tablets; a tablet array board which is disposed in the tablet accommodating section and which, while being driven and rotated, retains the tablets one by one in pockets defined on an outer periphery thereof and discharges them at a discharge position; and a partitioning member whose partitioning portion located at each of the pockets of the tablet array board partitions the pocket into upper and lower two divisions, thereby restricting a number of tablets to be discharged, the tablet feeder being characterized in that

**6**

the partitioning portion of the partitioning member comprises a plurality of elastic bristles formed into a comb shape.

2. The tablet feeder according to claim **1**, wherein the elastic bristles are each tilted toward a downstream side of rotational direction of the tablet array board.

3. The tablet feeder according to claim **1**, wherein the elastic bristles have their cross section formed into a generally oval shape, and its minor axis is directed along the rotational direction of the tablet array board.

4. The tablet feeder according to claim **2**, wherein the elastic bristles have their cross section formed into a generally oval shape, and its minor axis is directed along the rotational direction of the tablet array board.

*    *    *    *    *

EXHIBIT B

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Northern _____ DISTRICT OF _____ Illinois

Yuyama Manufacturing Co., Ltd.

V.

JVM Co., Ltd

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  RDB 06CV2536 (Pending in DMD)

TO:  Automed Technology
     875 Woodlands Parkway
     Vernon Hills, IL 60061

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please see attached Schedule A.

| PLACE   Park Law Firm<br>3255 Wilshire Blvd. 11th Fl., Los Angeles, CA 90010 | DATE AND TIME<br>6/11/2007 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   *Attorney for defendant* | DATE   5/23/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michele C. Friedlander, Esq., Park Law Firm
3255 Wilshire Blvd. 11th Fl., Los Angeles, CA 90010  Tel. 213.389.3777

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

_____

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

SCHEDULE A

Documents Requested from Automed Technology

1. Copies of documents sufficient to identify each of your sales of any automated medication packaging system manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd. or any of its subsidiaries sold between the years of 1994-1995 and after December 2000.

   For each machine, responsive documents shall include, without limitation, documents sufficient to identify: customer name, sale date , sale price, machine make and model, machine serial number and all accessories (whether consumable, spare part, individual medication dispensing cassette or otherwise) sold with each machine.

2. To the extent not specifically identified in response to the prior request, copies of documents sufficient to identify each of your sales of any individual medication dispensing cassettes *(i.e.,* the units in which the individual tablets, pills or capsules of like kind are stored and from which they are dispensed) manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd. or any of its subsidiaries sold between the years of 1994-1995 and after December 2000.

   For each cassette, responsive documents shall include, without limitation, documents sufficient to identify: customer name, sale date, sale price, sale quantity, and cassette make and model.

3. Copies of documents sufficient to identify all of your sales of consumables (including, e.g., packaging papers or foils, lubricants and printer inks, ribbons or cartridges) to customers using any automated medication packaging system manufactured in whole or in part by Yuyama Manufacturing Co., Ltd. sold between the years of 1994-1995 and after December 2000.

   For each consumable, responsive documents shall include, without limitation, documents sufficient to identify: SKU or item name and number of consumable, customer name, sale date, sale quantity, and sale price.

4. Copies of documents sufficient to identify all of your sales of spare or replacement parts for any automated medication packaging system manufactured in whole or in part by Yuyama Manufacturing Co., Ltd. sold between the years of 1994-1995 and after December 2000.

   For each consumable, responsive documents shall include, without limitation, documents sufficient to identify: SKU or item name and number of the spare or replacement part, customer name, sale date, sale quantity, and sale price.

5. Copies of all advertising or marketing material given to you concerning any automated medication packaging system manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd. published between the years of 1994-1995 and after December 2000.

6.  Copies of all advertising or marketing material generated by you or at your direction concerning any automated medication packaging system manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd. published between the years of 1994-1995 and after December 2000.

7.  Copies of all licensing or settlement agreements concerning automated medication packaging system manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd. made between the years of 1994-1995 and after December 2000.

8.  Copies of all documents concerning any sales forecast, sales projection or market analysis concerning any automated medication packaging system and related products (including without limitation consumables and replacement parts) manufactured in whole in part, or sold by, Yuyama Manufacturing Co., Ltd. or any other manufacturer made between the years of 1994-1995 and after December 2000.

9.  Copies of all documents concerning any automated medication packaging system manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd., including without limitation such machines, systems or components thereof sold in the United States between the years of 1994-1995 and after December 2000.

EXHIBIT C

AO88  (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

_____ Northern _____ DISTRICT OF __Illinois_____

Yuyama Manufacturing Co., Ltd.

**SUBPOENA IN A CIVIL CASE**

V.

JVM Co. Ltd.

Case Number: [1] MJG 06CV2536
(Pending in the U.S. District Court
for the District of Maryland)

TO:  Automed Technologies, Inc.
     875 Woodlands Parkway
     Vernon Hills, IL 60061

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in
the above case.

| PLACE OF DEPOSITION Bridge Court Reporters 77 W. Washington St., Suite 704, Chicago, IL 60602 | DATE AND TIME April 16, 2008 9:30 a.m. |
|---|---|

☐  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   Attorney for Defendant | DATE 3/26/08 |
|---|---|

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Chong Roh, Esq., Park Law Firm
3255 WIlshire Blvd., 11th Floor, Los Angeles, CA 90010 Tel. 213.389.3777

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

AO88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| | | | |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|
| | |
| | ADDRESS OF SERVER |
| | |

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested.  If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling.  Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.  A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.  The person who produced the information must preserve the information until the claim is resolved.

e) CONTEMPT.  Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.  An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## SCHEDULE A

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 30(b)(6), Defendant is seeking the deposition of one or more representatives of Automed Technologies, Inc. ("Automed") to testify about the following numbered topics on Automed's behalf. In complying with this Subpoena, the recipient has a duty to designate one or more witnesses who have knowledge of matters known or reasonably known to the Subpoena recipient concerning the following numbered topics:

### DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase word in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1. *You/Your*: The terms "you" or "your" includes the person(s) to whom this Request is addressed, and all of that person's agents, representatives and attorneys.

2. The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all"; "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neuter form shall include each of the other genders.

3. *Automated Dispensing System*: The term "Automated Dispensing System" is defined as any machine which counts and/or dispenses tablets or capsules and which was manufactured or sold in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd. or any of its subsidiaries. This definition includes, but not limited, the Automated Dispensing Systems having the following model nos.: 130FDX, 200/300FX, 250FD, 250FDS, 330FDS and 520FDS.

### CATEGORIES

1. Each of Your sales of any Automated Dispensing System sold from January 1, 1993 through December 15, 1996, and from September 7, 1998, through the present, including but not limited to, purchase orders, bills of lading, receipts, billing statements, invoices, memorandum, and reports.

   For each machine, responsive information shall include, without limitation, information sufficient to identify: customer name, customer address, sale date, sale price, machine make and model, machine serial number and all accessories (whether consumable, spare part, individual medication dispensing cassette or otherwise) sold with each machine.

2.  Each of your sales of any individual medication dispensing cassettes (also called tablet feeders) (i.e., the units in which the individual tablets, pills or capsules of like kind are stored and from which they are dispensed) manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd. or any of its subsidiaries sold from January 1, 1993 through December 15, 1996, and from September 7, 1998 through the present where the cassettes have or may have a "comb shape" partition as disclosed and claimed in U.S. Patent No. 5,803,309 attached hereto.

    For each cassette, responsive information shall include, without limitation, information sufficient to identify: customer name and address, sale date, sale price, sale quantity, and cassette make and model.

3.  Your sales of consumables (including, e.g., packaging papers or foils, lubricants and printer inks, ribbons or cartridges) to customers for the use with any Automated Dispensing System sold from January 1, 1993 through December 15, 1996 and from September 7, 1998 through the present.

    For each consumable, responsive information shall include, without limitation, information sufficient to identify:  SKU or item name and number of consumable, customer name and address, sale date, sale quantity, and sale price.

4.  Your sales of spare or replacement parts for any Automated Dispensing System sold from January 1, 1993 through December 15, 1996 and from September 7, 1998 through the present.

    For each consumable, responsive information shall include, without limitation, information sufficient to identify:  SKU or item name and number of the spare or replacement part, customer name, sale date, sale quantity, and sale price.

5.  Copies of all advertising or marketing material given to you concerning any Automated Dispensing System published from January 1, 1993 through December 15, 1996 and from September 7, 1998 through the present.

6.  All advertising or marketing material and information generated by you or at your direction concerning any Automated Dispensing System published from January 1, 1993 through December 15, 1996 and from September 7, 1998 through the present.

7.  All licensing or settlement agreements concerning any Automated Dispensing System made from January 1, 1993 through December 15, 1996 and from September 7, 1998 through the present.

8.  Any sales forecast, sales projection or market analysis concerning any Automated Dispensing System and related products (including without limitation consumables and replacement parts) make from January 1, 1993 through December 15, 1996 and from September 7, 1998 through the present.

9. Any Automated Dispending System, including without limitation such machines, systems or components thereof sold in the United States between January 1, 1993 through December 15, 1996 and from September 7, 1998 through the present.

10. The marking of any Automated Dispensing System with U.S. Patent No. 5,803,309 or similar designation.

11. Automed's search for, as well as the information contained in, all documents produced by you in response to any subpoena from JVM, including the subpoena dated May 23, 2007.

# EXHIBIT D

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Northern _____ DISTRICT OF _____ Illinois

Yuyama Manufacturing Co., Ltd.

V.

JVM Co., Ltd

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  RDB 06CV2536 (Pending in DMD)

(Pending in the U.S. District Court
for the District of Maryland)

TO:  Duane Chudy
17 Dukes Lane
Lincolnshire, IL 60069

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  Bridge Court Reporters 77 W. Washington St., Suite 704, Chicago, IL 60602 | DATE AND TIME  5/2/2008 9:00 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please see attached Schedule A.

| PLACE        Bridge Court Reporters 77 W. Washington St., Suite 704, Chicago, Il 60602 | DATE AND TIME  5/2/2008 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   Attorney For Defendant | DATE  4/3/08 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Chong Roh, Esq., Park Law Firm
3255 Wilshire Blvd. 11th Fl., Los Angeles, CA 90010  Tel. 213.389.3777

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                    DATE                                      SIGNATURE OF SERVER

                                                    _____
                                                    ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## SCHEDULE A

### INSTRUCTIONS

1. If, in responding to this Request for Production, the responding party encounters any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction using in responding.

2. Whenever in this request you are asked to identify or produce a document which is deemed by you to be properly withheld from production for inspection or copying:

   A. If you are withholding the document under claim of privilege (including, but not limited to, the work product doctrine), please provide the information set forth in Fed. R. Civ. P. 26(b)(5) and Discovery Guideline 9(c)(ii)(b), including the type of document, the general subject matter of the document, the date of the document, and such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information revealing the information claimed to be protected, will enable this party to access the applicability of the privilege or protection claimed by you;

   B. If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery or that a request is unduly burdensome, identify as to each document and, in addition to the information requested in ¶2.A above, please state the reason for withholding the document.

3. When a document contains both privileged and non-privileged material, non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to the part of the material contained in the document, the party claiming the privilege must clearly indicate the potions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

4. It is intended that this Request will not solicit any material protected either by the attorney client privilege or by the work product doctrine which was created by, or developed by, counsel for the responding party after the date on which this litigation was commenced. If any Request is susceptible of a construction which calls for the production of such material, that material need not be provided and no privilege log pursuant to Fed. R. Civ. P. 26(b)(5) or Discovery Guideline 9(a) will be required as to such material.

1

5. If production of any requested document(s) is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

<u>DEFINITIONS</u>

Notwithstanding any definition set forth below, each word, term, or phrase word in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1. *Communication*: The term "communication" means the transmittal of information by any means.

2. *Concerning*: The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

3. *Document*: The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents" in Fed. R. Civ. P. 34(a) and include(s) the term writing." Unless the producing party demonstrates undue burden or other grounds sufficient to meet the requirement of Fed. R. Civ. P. 26(c), electronic mail is included within the definition of the term "document". The terms "writings", "recordings", and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001. A draft or non-identical copy is a separate document within the meaning of the term "document."

4. *Occurrence/Transaction*: The terms "occurrence" and "transaction" means the events described in the Complaint and other pleadings, as the word "pleadings" is defined in Fed. R. Civ. P. 7(a).

5. *Parties*: The terms "plaintiff" and "defendant" (including, without limitation, third-party plaintiff, third-party defendants, counter claimant, counter-defendant, and cross-defendant), as well as a party's full or abbreviated name or a pronoun referring to a party, mean that party and, where applicable, its officers, directors, and employees. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation or to limit the Court's jurisdiction to enter any appropriate order.

6. *Person*: The term "person" is defined as any natural person or any business, legal or governmental entity, or association.

7. *You/Your*: The terms "you" or "your" include the person(s) to whom this Request is addressed, and all of that person's agents, representatives and attorneys.

8. The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all"; "any" means "any and all." "Including" means "including but not limited to. "And" and "or" encompass both

2

"and" and "or." Words in the masculine, feminine or neuter form shall include each of the other genders.

9.  If the requested documents are maintained in a file, the file folder is included in the request for production of those documents.

10. *Automated Dispensing System*: The term "Automated Dispensing System" is defined as any machine which counts and/or dispenses tablets and which was manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd. or any of its subsidiaries. This definition includes, but not limited, the following automated dispensing systems: 130FDX, 200/300FX, 250FD, 250FDS, 330FDS and 520FDS.

<u>DOCUMENTS REQUESTED</u>

1. Copies of all documents in your control or custody concerning any Automated Dispensing System.

2. Copies of documents concerning each of purchases of any Automated Dispensing System sold from January 1, 1993 through December 15, 1996 and September 7, 1998 and thereafter, including but not limited to, purchase orders, bills of lading, receipts, billing statements, invoices, memorandum, and reports.

   For each machine, responsive documents shall include, without limitation, documents sufficient to identify: customer name and address, purchase date, date of delivery, sale date, sale price, supplier name, purchase date, date of delivery, date of order, machine make and model, machine serial number and all accessories (whether consumable, spare part, individual medication dispensing cassette or otherwise) sold with each machine.

3. Copies of all advertising or marketing material given to you and in your control or custody concerning any Automated Dispensing System published from January 1, 1993 through December 15, 1996 and September 7, 1998 and thereafter.

4. Copies of all licensing or settlement agreements in your control or custody concerning any Automated Dispensing System made from January 1, 1993 through December 15, 1996 and September 7, 1998 and thereafter.

5. Copies of all service manuals, maintenance reports and service reports in your control or custody concerning any Automated Dispensing System.

6. All documents concerning Yuyama Manufacturing Company, Ltd., an any of its subentities (e.g., an R&D center) including, but not limited to, staff directories, organizational charts, job descriptions, memorandum, correspondence, reports, disclosures, patents, patent applications, journal articles, assignments, contracts, employment contracts, press releases, media articles, advertising, catalogs and web pages.

7. All entries in a diary, appointment book or other document (electronic or paper) that references an appointment or other interaction with Shoji Yuyama, Itsuo Yasunaga, Naoki Koike and/or Yuyama Manufacturing Company, Ltd. regarding any Automated Dispensing System.

4

# DECLARATION OF MARK L. SUTTON

I, Mark L. Sutton, declare:

1.      I am an attorney licensed to practice in the State of California. I am a member of the Park Law Firm, attorneys for Defendant JVM Co., Ltd. ("JVM").

2.      On April, 18, 2008, I met and conferred concerning the issues raised by this motion to compel AutoMed Technologies, Inc. ("AutoMed") with the attorneys for AutoMed, Steve Bizar and Christopher Hapka of the law firm of Buchannon Ingersoll & Rooney PC, located in Philadelphia, Pennsylvania, near the headquarters for AutoMed's parent company, Amerisource-Bergen. Mr. Bizar and I met and conferred on the telephone.

3.      Formal objections have been served by AutoMed to the JVM document subpoena. Several letters and emails have been exchanged between me and Mr. Bizar concerning these issues. I have also received a cover letter from Mr. Hapka producing copies of electronic records responsive to the subpoena (Ex. B) attached to the Roh declaration on this motion. Attached as Exhibits E through N are the objections, letters and emails referred to in this paragraph.

4.      During the meet and confer process and the other written communications between JVM and AutoMed, the issues have been narrowed down to two. The first issue is whether JVM must pay for AutoMed's attorneys and paralegals to search for and produce copies of documents stored in paper form in archives by AutoMed, or whether JVM can incur that expense itself by having its attorneys and paralegals conduct those activities subject to an "attorneys eyes only" protective order. AutoMed has agreed to produced, and has produced, copies of various electronic records that are responsive to the document subpoena (Ex. B attached to the Roh declaration). The second issue is whether AutoMed should have to appear for its F.R.Civ.P. 30(b)(6) deposition as noticed or should be permitted to only respond to a deposition on written questions.

5.      At AutoMed's request, the parties have agreed that the confidentiality protective order in the underlying patent infringement action pending in the District of Maryland will be used to protect confidentiality. That protective order has a HIGHLY CONFIDENTIAL category of information/documents which prevents the receiving party from receiving the information designated by that category, while allowing the outside attorneys and attorney staff to see the information/documents.

6.      On April 30, 2008, I also met and conferred with counsel for Duane Chudy, the former President and owner of AutoMed, concerning the issues raised in this motion pertaining to Mr. Chudy. That meeting took place in Jackson, California after a deposition of a different third party. The attorney for Mr. Chudy is an attorney for Plaintiff Yuyama Manufacturing Co., Ltd. in the underlying patetnt infringement action, Mr. Torsten Kracht. Before the April 30 meet and confer, Mr. Kracht had informed me that Mr. Chudy should not have to appear for his deposition because he has no knowledge

pertaining to the underlying action, even though Mr. Chudy was President of Yuyama's primary distributor of the products allegedly covered by the patent in suit during the period when potential patent invalidating sales were made in the United States (pursuant to 35 U.S.C. 102(b)) as well as the period allegedly giving rise to Yuyama's damages resulting from JVM's alleged patent infringement. I responded that such a position did not seem credible and, if true, would be evidence of the lack of importance in the U.S. market of the invention claimed in the patent in suit.

7.      At the April 30 meet and confer, Mr. Kracht indicated that Mr. Chudy was agreeable to having the deposition take place near Chicago if a deposition of AutoMed goes forward at that location, near the same date as the AutoMed deposition. I said I would get back to him on that issue and have determined that such a course of action is acceptable.

8.      In view of the foregoing, the Chudy deposition becomes an issue on this motion only if the Court permits AutoMed merely to submit to a deposition on written questions and not the F.R.Civ.P. 30(b)(6) oral deposition noticed in the AutoMed subpoena (Ex. C).

9.      I have conducted an internet search of AutoMed's website. According to the website at the "markets" designation, AutoMed machines dispense about 750,000 prescriptions per day. According to the same website at the "about AutoMed" designation, AutoMed is a division of Amerisource-Bergen, a company with $54 billion in annual sales and more than 13,000 employees.

10.     I understand that JVM has annual sales of less than $50 million annually.

11.     At AutoMed's deposition, I anticipate that JVM will be asking questions concerning patent invalidity and damages that are not contained in, or within subject matter of, documents produced by AutoMed.

I declare under penalty of perjury that the foregoing is true and correct, and if called upon as a witness, I could testify thereto, and I have personal knowledge of the foregoing facts.

Executed this 2nd day of May, 2008 at Covina, California.

Mark L. Sutton

EXHIBIT E

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**YUYAMA MANUFACTURING CO., LTD.**

  **Plaintiff,**

   **v.**

**JVM CO., LTD.**

  **Defendants,**

**SUBPOENA IN A CIVIL CASE**

No. 06CV2536 (Pending in DMD)

**NON-PARTY AUTOMED TECHNOLOGIES INC.'S OBJECTIONS TO DEFENDANT'S**
**SUBPOENA FOR INSPECTION OF DOCUMENTS**

  Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, AutoMed

Technologies Inc.(AutoMed) , hereby objects to the Subpoena dated May 23, 2007 (the

"Requests" or the "Subpoena"), as follows:

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

  1.  AutoMed objects to the Subpoena to the extent that various terms are not

adequately defined, thus making certain Requests overbroad and without proper limits as to their

subject matter or scope.

  2.  AutoMed objects to the time period covered by the Subpoena, years 1994-1995

and after December 2000, on the grounds that it renders the Subpoena overbroad, unduly

burdensome, and not limited to information reasonably calculated to lead to the discovery of

admissible evidence.

  3.  AutoMed objects to the Subpoena because the time specified for a response, June

11, 2007, is wholly inadequate given the complexity and breadth of the requests, and the nature

and amount of information requested.

## GENERAL OBJECTIONS

The following objections form part of AutoMed's response to each Request. They are set forth here to avoid the necessity of restating them for each individual response. Failure to incorporate an objection, however, shall not be construed as a waiver of it with respect to any Request.

1.    AutoMed objects to each Request to the extent that it is over broad, unduly burdensome and oppressive, and responding would subject AutoMed to an unreasonable burden and expense.

2.    AutoMed objects to each Request to the extent it is not narrowly tailored so as to avoid imposing an undue burden or expense on AutoMed as required by Fed.R.Civ.P. 45.

3.    AutoMed objects to each Request to the extent it seeks information that is outside of the requirements imposed upon AutoMed by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois.

4.    AutoMed objects to each Request to the extent that it seeks information which is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or other applicable privilege.

5.    AutoMed objects to each Request to the extent that it purports to impose upon AutoMed a duty to search for and disclose information that is not within AutoMed's possession, custody or control and is, therefore, unduly burdensome and goes beyond the limits permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois.

6.     AutoMed objects to each Request to the extent that it seeks information which is neither relevant to the subject matter involved in the underlying Lawsuit, nor reasonably calculated to lead to the discovery of admissible evidence.

7.     AutoMed objects to each Request to the extent that it calls for information within the Defendant's knowledge, custody or control, or to which the Defendant has equal or superior access, on the grounds that such Requests are unduly burdensome and oppressive.

8.     AutoMed objects to each Request to the extent it seeks information that may be obtained from other sources that are more convenient, less burdensome or less expensive.

9.     AutoMed objects to each Request to the extent that it requests the production of documents or information that either is not maintained by AutoMed in the form requested or that is not maintained by AutoMed at all.

10.     AutoMed objects to each Request to the extent that it is vague, ambiguous and confusing, rendering it incapable of being answered.

11.     AutoMed objects to each Request to the extent that it requires the production of information protected from disclosure as confidential trade secrets, business information and/or documents of a proprietary nature.

12.     AutoMed objects to each Request to the extent that various terms are not adequately defined, thus making certain subjects overbroad and without proper limits as to their subject matter or scope.

## REIMBURSEMENT OF COSTS AND EXPENSES

It is well established that courts require a requesting party that serves a subpoena on a non-party to reimburse a responding non-party for discovery expenses, especially where

compliance with the request places an unreasonable burden and/or expense on the producing

non-party. *See e.g., In Re Letters Rogatory*, 144 F.R.D. 272 (E.D.Pa. 1992) ("both the Advisory

Committee Report and the Practice Commentaries are unequivocally clear that under

Fed.R.Civ.P. 45 this Court 'shall' include in its order granting a subpoena to a non-party a

provision for "defraying the expenses that the production, inspection, copying, etc. may require .

. . [W]e . . . emphasize that a witness's nonparty status is an important factor to be considered in

determining whether to allocate discovery costs on the demanding or the producing party.")

*Compare also*, Fed. R. Civ. P. 45 (c)(1) ("A party or an attorney responsible for the issuance and

service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on

a person subject to that subpoena . . . ") and (c)(3)(B)(iii) ("If a subpoena . . . requires a person

who is not a party . . . . or, if the party in whose behalf the subpoena is issued shows a

substantial need for the testimony or material that cannot be otherwise met without undue

hardship and assures that the person to whom the subpoena is addressed will be reasonably

compensated, the court may order appearance or production only upon specified conditions")

When the information sought from a non-party by a subpoena is stored electronically, the

rational for shifting the costs to locate, harvest and organize such electronic information to the

requesting party applies with even greater force. A non-party's legal fees, especially where the

work benefits the requesting party, have also been considered a cost of compliance reimbursable

under Fed.R.Civ.P. 45(c)(2)(B). *See, e.g., First American Corporation v. Price Waterhouse

LLP*, 184 F.R.D. 234 (S.D.N.Y. 1998).

Accordingly, ABC specifically reserves the right to be reimbursed for all costs of

compliance it incurs to respond to the Subpoena.

## SPECIFIC OBJECTIONS TO SUBPOENA

**Request No. 1**

Copies of documents sufficient to identify each of your sales of any automated medication packaging system manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd. or any of its subsidiaries sold between the years of 1994-1995 and after December 2000.

For each machine, responsive documents shall include, without limitation, documents sufficient to identify:  customer name, sale date, sale price, machine make and model, machine serial number and all accessories (whether consumable, spare part, individual medication dispensing cassette or otherwise) sold with each machine.

**Response Request No. 1**

AutoMed objects to this request to the extent that it is over broad, unduly burdensome and oppressive, and responding would subject AutoMed to an unreasonable burden and expense. AutoMed also objects to this request to the extent it is not narrowly tailored so as to avoid imposing an undue burden or expense on AutoMed as required by Fed.R.Civ.P. 45.   AutoMed further objects to this request to the extent that it is vague, ambiguous and confusing, rendering it incapable of being answered.  AutoMed also objects to this request to the extent that it requires the production of information protected from disclosure as confidential trade secrets, business information and/or documents of a proprietary nature.  AutoMed further objects to this request to the extent that the terms "automated medication packaging system"; "Yuyama Manufacturing Co., Ltd. or any of its subsidiaries"; "machine make and model" and "all accessories (whether consumable, spare part, individual medication dispensing cassette or otherwise)"are not

adequately defined, thus making the request overbroad and without proper limits as to its subject matter or scope.

**Request No. 2**

To the extent not specifically identified in response to the prior request, copies of documents sufficient to identify each of your sales of any individual medication dispensing cassettes (i.e., the units in which the individual tablets, pills or capsules of like kind are stored and from which they are dispensed) manufactured in whole or in part sold by Yuyama Manufacturing Co., Ltd. or any of its subsidiaries sold between the years of 1994-1995 and after December 2000.

For each cassette, responsive documents shall include, without limitation, documents sufficient to identify; customer name, sale date, sale price, sale quantity, and cassette make and model.

**Response to Request No. 2**

AutoMed objects to this request to the extent that it is over broad, unduly burdensome and oppressive, and responding would subject AutoMed to an unreasonable burden and expense. AutoMed also objects to this request to the extent it is not narrowly tailored so as to avoid imposing an undue burden or expense on AutoMed as required by Fed.R.Civ.P. 45. AutoMed further objects to this request to the extent that it requires the production of information protected from disclosure as confidential trade secrets, business information and/or documents of a proprietary nature. AutoMed also objects to this request because the terms "individual medication dispensing cassettes" and "Yuyama Manufacturing Co., Ltd. or any of its subsidiaries" are not adequately defined, thus making the request overbroad and without proper

limits as to its subject matter or scope. AutoMed further objects to this request to the extent that it is vague, ambiguous and unintelligible, rendering the request incapable of being answered.

## Request No. 3

Copies of documents sufficient to identify all of your sales of consumables (including e.g., packaging papers or foils, lubricants and printer inks, ribbons or cartridges) to customers using any automated medication packaging system manufactured in whole or part by Yuyama Manufacturing Co., Ltd. sold between the years of 1994-1995 and after December 2000.

For each consumable, responsive documents shall include, without limitation, documents sufficient to identify: SKU or item name and number of consumable, customer name, sale date, sale quantity, and sale price.

## Response to Request No. 3

AutoMed objects to this request to the extent that it is over broad, unduly burdensome and oppressive, and responding would subject AutoMed to an unreasonable burden and expense. AutoMed also objects to this request to the extent it is not narrowly tailored so as to avoid imposing an undue burden or expense on AutoMed as required by Fed.R.Civ.P. 45. AutoMed further objects to this request to the extent that it requires the production of information protected from disclosure as confidential trade secrets, business information and/or documents of a proprietary nature. AutoMed also objects to this request because the terms "consumables" and "automated medication packaging system" are not adequately defined, thus making the request overbroad and without proper limits as to its subject matter or scope. AutoMed further objects to this request to the extent that it is vague, ambiguous and unintelligible, rendering the request incapable of being answered.

**Request No. 4**

Copies of documents sufficient to identify all of your sales of spare or replacement parts for any automated medication packaging system manufactured in whole or in part by Yuyama Manufacturing Co., Ltd. sold between the years 1994-1995 and after December 2000.

For each consumable, responsive documents shall include, without limitation, documents sufficient to identify:  SKU or item name and number of consumable, customer name, sale date, sale quantity, and sale price.

**Response to Request No. 4**

AutoMed objects to this request to the extent that it is over broad, unduly burdensome and oppressive, and responding would subject AutoMed to an unreasonable burden and expense. AutoMed also objects to this request to the extent it is not narrowly tailored so as to avoid imposing an undue burden or expense on AutoMed as required by Fed.R.Civ.P. 45.  AutoMed further objects to this request to the extent that it requires the production of information protected from disclosure as confidential trade secrets, business information and/or documents of a proprietary nature.  AutoMed also objects to this request because the terms "spare or replacement parts"; "automated medication packaging system" and "consumables" are not adequately defined, thus making the request overbroad and without proper limits as to its subject matter or scope.  AutoMed further objects to this request to the extent that it is vague, ambiguous and unintelligible, rendering the request incapable of being answered.

**Request No. 5**

Copies of all advertising or marketing material given to you concerning any automated medication packaging system manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd. published between the years of 1994-1995 and after December 2000.

**Response to Request No. 5**

AutoMed objects to this request to the extent that it is over broad, unduly burdensome and oppressive, and responding would subject AutoMed to an unreasonable burden and expense. AutoMed also objects to this request to the extent it is not narrowly tailored so as to avoid imposing an undue burden or expense on AutoMed as required by Fed.R.Civ.P. 45. AutoMed further objects to this request to the extent that it requires the production of information protected from disclosure as confidential trade secrets, business information and/or documents of a proprietary nature. AutoMed also objects to this request because the terms "advertising or marketing material" and "automated medication packaging system" are not adequately defined, thus making the request overbroad and without proper limits as to its subject matter or scope. AutoMed further objects to this request to the extent that it is vague, ambiguous and unintelligible, rendering the request incapable of being answered. AutoMed also objects to this request to the extent it seeks information that may be obtained from other sources that are more convenient, less burdensome or less expensive, including parties to this litigation. AutoMed also objects to this request to the extent that it seeks information which is neither relevant to the subject matter involved in the underlying Lawsuit, nor reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 6**

Copies of all advertising or marketing material generated by you or at your directions concerning any automated medication packaging system manufactured in whole or in part, or

sold by Yuyama Manufacturing Co., Ltd. published between the years 1994-1995 and after December 2000.

**Response to Request No. 6**

AutoMed objects to this request to the extent that it is over broad, unduly burdensome and oppressive, and responding would subject AutoMed to an unreasonable burden and expense. AutoMed also objects to this request to the extent it is not narrowly tailored so as to avoid imposing an undue burden or expense on AutoMed as required by Fed.R.Civ.P. 45. AutoMed further objects to this request to the extent that it requires the production of information protected from disclosure as confidential trade secrets, business information and/or documents of a proprietary nature. AutoMed also objects to this request because the term "advertising or marketing material" is not adequately defined, thus making the request overbroad and without proper limits as to its subject matter or scope. AutoMed further objects to this request to the extent that it is vague, ambiguous and unintelligible, rendering the request incapable of being answered. AutoMed also objects to this request to the extent that it seeks information which is neither relevant to the subject matter involved in the underlying Lawsuit, nor reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 7**

Copies of all licensing or settlement agreements concerning automated medication packaging system (sic) manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd. made between the years of 1994-1995 and after December 2000.

**Response to Request No. 7**

AutoMed objects to this request to the extent that it is over broad, unduly burdensome and oppressive, and responding would subject AutoMed to an unreasonable burden and expense. AutoMed also objects to this request to the extent it is not narrowly tailored so as to avoid imposing an undue burden or expense on AutoMed as required by Fed.R.Civ.P. 45. AutoMed further objects to this request to the extent that it requires the production of information protected from disclosure as confidential trade secrets, business information and/or documents of a proprietary nature. AutoMed also objects to this request because the terms "licensing or settlement agreements" and "automated medication packaging system" are not adequately defined, thus making the request overbroad and without proper limits as to its subject matter or scope. AutoMed further objects to this request to the extent that it seeks information which is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or other applicable privilege. AutoMed also objects to this request to the extent that it is vague, ambiguous and unintelligible, rendering the request incapable of being answered. AutoMed also objects to this request to the extent that it seeks information which is neither relevant to the subject matter involved in the underlying Lawsuit, nor reasonably calculated to lead to the discovery of admissible evidence.

## Request No. 8

Copies of all documents concerning any sales forecasts, sales projections or market analysis concerning any automated medication packaging system and related products (including without limitation consumables and replacement parts) manufactured in whole in part , or sold by, Yuyama Manufacturing  Co., Ltd. or any other manufacturer made between the years of 1994-1995 and after December 2000.

**Response to Request No. 8**

AutoMed objects to this request to the extent that it is over broad, unduly burdensome and oppressive, and responding would subject AutoMed to an unreasonable burden and expense. AutoMed also objects to this request to the extent it is not narrowly tailored so as to avoid imposing an undue burden or expense on AutoMed as required by Fed.R.Civ.P. 45. AutoMed further objects to this request to the extent that it requires the production of information protected from disclosure as confidential trade secrets, business information and/or documents of a proprietary nature. AutoMed also objects to this request because the terms "sales forecasts"; "sales projections"; "market analysis"; "automated medication packaging system"; "consumables" and "replacement parts" are not adequately defined, thus making the request overbroad and without proper limits as to its subject matter or scope. AutoMed further objects to this request to the extent that it is vague, ambiguous and unintelligible, rendering the request incapable of being answered.

**Request No. 9**

Copies of all documents concerning any automated medication packaging system manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd., including without limitation such machines, systems, or components thereof sold in the United States between the years of 1994-1995 and after December 2000.

**Response to Request No. 9**

AutoMed objects to this request to the extent that it is over broad, unduly burdensome and oppressive, and responding would subject AutoMed to an unreasonable burden and expense. AutoMed also objects to this request to the extent it is not narrowly tailored so as to avoid imposing an undue burden or expense on AutoMed as required by Fed.R.Civ.P. 45. AutoMed

further objects to this request to the extent that it requires the production of information protected from disclosure as confidential trade secrets, business information and/or documents of a proprietary nature. AutoMed also objects to this request because the terms "automated medication packaging system" and "machines, systems or components" are not adequately defined, thus making the request overbroad and without proper limits as to its subject matter or scope. AutoMed further objects to this request to the extent that it is vague, ambiguous and unintelligible, rendering the request incapable of being answered. AutoMed also objects to this request to the extent it seeks information that may be obtained from other sources that are more convenient, less burdensome or less expensive, including parties to this litigation.

**AmerisourceBergen Corporation**

Dated     June 4, 2007

By: _Jonathan R. Sturz_

**Counsel for Non-Party**
**AutoMed Technologies Inc.**

## CERTIFICATE OF SERVICE

I, Jonathan R. Sturz, hereby certify that, on this June 4, 2007, I caused a true and correct copy of the foregoing AutoMed Technologies Inc.'s Objections to Defendant's Subpoena for Inspection of Documents to be served upon the following Defendant's counsel of record as follows:

*first class U.S. mail*
Michele C. Friedlander
Park Law Firm
3255 Wilshire Blvd.
11th Floor
Los Angeles, CA 90010

Torsten M. Kracht
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Ave., N.W.
Washington DC 20036-1504

_____
Jonathan R. Sturz

# EXHIBIT F

**Buchanan Ingersoll ⚘ Rooney** PC
Attorneys & Government Relations Professionals

1835 Market Street
14th Floor
Philadelphia, PA 19103-2985

**Steven E. Bizar**
215 665 3826
steven.bizar@bipc.com

T 215 665 8700
F 215 665 8760
www.buchananingersoll.com

April 11, 2008

**VIA ELECTRONIC MAIL AND FIRST-CLASS MAIL**

Chong H. Roh, Esquire
Park Law Firm
3255 Wilshire Blvd, 11th Floor
Los Angeles, CA 90010
chroh@parklaw.com

      Re:    <u>Yuyama Mfg. Co. v. JVM Co.</u>

Dear Mr. Roh:

      We have been engaged by AmerisourceBergen Corporation ("ABC") and Automed Technologies, Inc. ("Automed") to represent them with regard to your client's most recent round of subpoenas and ill-advised threats of motion practice. I write in reply to your letter to Jonathan Sturz, mis-dated April 1, 2008, but actually delivered on April 9, setting forth your client's intention to pursue additional third party discovery of ABC and Automed in the above-referenced case.

      As you know, both ABC and Automed have already responded to your client's May 2007 document subpoenas and in August of 2007 produced all information in their possession, custody, or control that is either relevant to the dispute at issue or that could possibly lead to the discovery of relevant information. Neither you nor your client gave any indication in the intervening seven months that you had any issue with this production. Indeed, until the most recent set of subpoenas, our client had not heard from you at all. To now belatedly seek to reopen and widen the scope of discovery of non-parties who are unlikely to have any additional relevant information is harassing, abusive and violates your duty under Fed. R. Civ. P. 45(c)(1) to take reasonable steps to avoid imposing undue burden and expense on these non-parties. These new requests also appear to violate your duty under Rule 30(a)(2)(A)(i) to seek leave of court to take more than ten depositions in a case.

      In addition, your subpoenas themselves are flawed on their face, to the point where it would be impossible or pointless for us to comply with them as written. By way of illustration, the Automed subpoena purports to seek only testimony, but your "Exhibit A" attached to the subpoena requests only categories of documents and specific information to be found on the face of those documents; for example, the SKU numbers of all printer cartridges sold between 1993 and the present. The ABC subpoena is even more ill-conceived, as it does not request any

April 11, 2008
Page - 2 -

testimony related to ABC, but is simply a duplicate of the Automed subpoena, including requests specific to Automed.  That being the case, I fail to see how any testimony from an ABC or Automed representative could possibly be relevant, useful, or necessary in your underlying litigation.  Should your client continue to insist on imposing these unnecessary and abusive costs on our non-party clients, we <u>will</u> seek all appropriate relief from the Courts in question, including the reimbursement of attorneys' fees and the imposition of appropriate sanctions under Fed. R. Civ. P. 45(c)(1).

As you should know, Local Rule 26.1(f) in the Eastern District of Pennsylvania and Local Rule 37.2 of the Northern District of Illinois require that the parties meet and confer in good faith regarding discovery disputes such as this one <u>before</u> any motion is brought before either Court.  You have failed to meet and confer here and in fact have not raised any purported production deficiencies in the past seven months, so your threatened motions to compel are premature.  Moreover, a conference to confer about the scope and content of your discovery requests and the timing of any response our client may make would be particularly appropriate here as, without such consultation, it would be difficult for us to prepare or even designate a 30(b)(6) representative for either company or know what additional documents you think should be produced.

As these issues must be addressed before any deposition, production, or motion takes place, and as the dates you have suggested for depositions would be inconvenient for our clients in any case, I suggest that we meet and confer on either the morning of April 18, 2008 or April 22, 2008 and attempt to resolve this matter without the necessity of involving the Courts.

I await your prompt reply.

Very truly yours,

Steven E. Bizar

SEB/

cc:    Christopher Hapka, Esquire
       Jonathan Sturz, Esquire

# EXHIBIT G

PS23:1

 **LAW FIRM**

A PROFESSIONAL CORPORATION

TEL 213.389.3777   FAX 213.389.3377   3255 Wilshire Blvd., 11th Fl. Los Angeles, CA 90010

WEB www.parklawfirm.com   KOREAN WEB www.parklaw.com   EMAIL firm@parklaw.com

April 14, 2008

**Via Email: <u>steven.bizar@bipc.com</u>**
**Confirmation by: <u>U.S. Mail</u>**

Steven E. Bizar, Esq.
Buchanan Ingersoll & Rooney PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103

   Re:    **<u>Yuyama Manufacturing Co., Ltd. v. JVM Co., Ltd.</u>**

Dear Mr. Bizar:

   This is in response to your letter dated April 11, 2008, and to set up a meet and confer regarding the depositions noticed for April 18, 2008 (Automed), and April 22, 2008 (Amerisource), as well as the subpoenas requesting documents during May, 2007.

   I can assure you that the documents requested, as well as the categories for the Rule 30(b)(6) depositions, are relevant to the lawsuit brought by Yuyama Manufacturing for patent infringement.  As Yuyama's primary U.S. distributor, Automed /Amerisource would necessarily have pertinent documents and information regarding damages and potentially patent invalidity.  Although you have probably been briefed by Yuyama's counsel concerning the underlying lawsuit, a copy of the patent in suit and the complaint are attached for your convenience.  Yuyama has asserted in the lawsuit that it is entitled to lost profits and/or reasonable royalties on sales of all pharmaceutical tablet dispensing machines, parts for such machines, and consumable items such as stickers and printing materials that are sold in conjunction with such dispensing machines.  Yuyama has also asserted it has marked its products with the number of the patent in suit and other similar indicia.  Of course, Yuyama asserts that its patent in suit is valid despite potential prior art sales of the patented tablet feeders in the U.S.  The documents requested and the deposition categories are each relevant to one or more of the foregoing issues.

   As for the documents previously produced, they fall short of the documents Automed, as Yuyama's primary U.S. distributor, no doubt has, that are relevant to the underlying lawsuit.  JVM waited to pursue all responsive documents only because JVM was not able to conduct depositions of your client(s) until now, due to other more pressing matters.  There has been no prejudice or undue expense to Automed/Amerisource due to the delay.

MLS2Bizar-20080414

Regarding the number of depositions, your impression is wrong. The Court in the underlying case has abrogated the ten deposition limit and instead limited the number of hours of deposition per side. JVM is well within that limit at this time.

Your comments about the recently served deposition subpoenas are meritless. It would be quite simple for Automed/Amerisource to comply with the deposition subpoenas. You have apparently not carefully read Schedule A attached to both subpoenas, or the subpoenas themselves. They set the depositions of your clients under F.R.Civ.P. 30(b)(6) and F.R.Civ.P. 45 and provide categories of information concerning which your clients' representatives are to testify. They do not request documents, as did the 2007 subpoenas. Your example is absurdly limiting and refers to information that is merely provided without limitation as an example of information sought within a broader category, and is listed with other examples.

The testimony from Automed/Amerisource is highly relevant to the underlying litigaton and must produced in view of the subpoenas. If Amerisource has no responsive information or documents, and Amerisource provides a statement to JVM under oath so stating, JVM has no intention at this time to pursue the document or deposition subpoenas of that party. However, that could change depending on what the Automed deposition reveals.

Your threats are not well taken. JVM has imposed no unnecessary or abusive costs on your clients. Your accusations are utterly baseless and do not meet the standards of professional conduct in view of their lack of support. You should be aware that frivolous accusations of violations of Fed. R. Civ. P. 45(c)(1) can themselves be a basis for sanctions.

We would be happy to meet and confer with you concerning the issues raised by the subpoenas. We did not do so previously because we were going to proceed with the depositions which were previously not objected to, and deal with the document subpoena objections later, if your clients made it necessary. We will address the objections to the document subpoenas (and those pertaining to the deposition subpoenas beyond the issues raised in this letter) which we believe to be inappropriate or unnecessary at the meet and confer.

We will meet and confer with you about all four subpoenas at 11:30 a.m. EST on April 18, 2008. That is 8:30 a.m. PST (our time), for your information.

Sincerely,

PARK LAW FIRM

Mark L. Sutton

.

# EXHIBIT H

**Buchanan Ingersoll ∧ Rooney** PC
Attorneys & Government Relations Professionals

1835 Market Street
14th Floor
Philadelphia, PA 19103-2985
T 215 665 8700
F 215 665 8760
www buchananingersoll com

Steven E. Bizar
215 665 3826
steven bizar@bipc com

April 16, 2008

**VIA ELECTRONIC MAIL AND FIRST-CLASS MAIL**

Mark L. Sutton, Esquire
Park Law Firm
3255 Wilshire Blvd, 11th Floor
Los Angeles, CA 90010
mlsutton@parklaw.com

      Re:   <u>Yuyama Mfg. Co. v. JVM Co.</u>

Dear Mr. Sutton:

      I write in response to your letter dated April 14, 2008, agreeing to a meet and confer for April 18, 2008 at 11:30 AM EST.  Please call me at the number above.

      As our client informed you at the time of the original production, there simply are no responsive documents in the possession of ABC.  ABC has never sold the allegedly infringing products and therefore there are no documents and no witnesses at that company relevant to your lawsuit.

      In addition, I would like to object to the statement in your letter that AutoMed and ABC's production, which was completed in August, "f[ell] short of the documents AutoMed . . . no doubt has."  AutoMed and ABC have already made what they considered to be a reasonable production, subject to our outstanding objections, over seven months ago.  This includes electronic documents sufficient to indicate the purchase and sales transactions on which you requested information as far back as 2000.

      At that time, we indicated to your colleagues that a search to determine if additional paper receipts and invoices existed, either as backup to the electronic data you were sent, or for the period before the installation of AutoMed's current computer system in 2000, would be extremely burdensome and expensive for AutoMed.  AutoMed and ABC naturally assumed that your failure to respond to their email for seven months signified that you were satisfied with this production.  Notably, Magistrate Judge Bredar reached a similar conclusion in this case in his Order of January 16, 2008, in refusing to "pry open an issue that [JVM] has waived" by waiting three months to object to the witness produced at a deposition.

April 16, 2008
Page - 2 -

AutoMed has complied with the subpoena to the extent it feels is reasonable. If you require additional documents, the same conditions apply that our client communicated to you in August. AutoMed will not carry out the searches set forth in the original requests, which are overbroad on their face and extremely burdensome. If you have need for some specific documents beyond what has been produced, we will consider carrying out a supplemental search and production in response to narrowly drawn requests with a clear legal justification, if and only if your client is willing to reimburse the costs of such additional, burdensome production. In no case, however, will ABC or AutoMed agree to the production of documents that could have been sought directly from a party. If the sales of Yuyama equipment are relevant either to your damages calculations or to an asserted 102(b) or 287(a) defense, I fail to see why the relevant fact discovery could not be as easily obtained from Yuyama itself.

As for the requested deposition testimony, your assertion in your recent letter that the requests in Schedule A "do not request documents, as did the 2007 subpoenas," and that our assertions to the contrary are the result of our not having "carefully read Schedule A," are disingenuous at best. It does not take a careful reading to notice that the requests attached to these testimonial subpoenas are identical, almost word-for-word, with your earlier document subpoenas, except for the elimination of phrases such as "Copies of" and "Copies of documents sufficient to identify" at the beginning of each request.

It is clear from the face of the two Schedules that no attempt was made to craft actual requests for deposition testimony or to minimize the burden on non-party deponents. The requests as presented would require ABC and AutoMed to prepare a corporate witness or witnesses on the minutiae of countless transactions dating back fifteen years; such an effort absolutely would not be, as you claim, "quite simple."

Our objections to these subpoenas are not "frivolous" or "baseless." Unless a satisfactory resolution can be arrived at, we will, as we previously indicated, seek appropriate relief from the Court.

I look forward to speaking with you on the 18th.

Very truly yours,

Steven E. Bizar

SEB/

cc:    Christopher Hapka, Esquire
       Jonathan Sturz, Esquire
       Chong H. Roh, Esquire

# EXHIBIT I

PS23:1

 **LAW FIRM**
A PROFESSIONAL CORPORATION

TEL 213.389.3777   FAX 213.389.3377   3255 Wilshire Blvd., 11th Fl. Los Angeles, CA 90010
WEB www.parklawfirm.com   KOREAN WEB www.parklaw.com   EMAIL firm@parklaw.com

April 18, 2008

**VIA EMAIL(steven.bizar@bipc.com)**

Steven E. Bizar, Esq.
Buchanan Ingersoll & Rooney PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103

Re:    **Yuyama Manufacturing Co., Ltd. v. JVM Co., Ltd.**

Dear Mr. Bizar:

This is to follow up on our meet and confer of this morning and to respond to your April 16, 2008 letter.

JVM stands by its statements in its letter of April 18, 2008. Automed in fact has documents that are responsive to the subpoena that were not produced. For example, at the meet and confer, you acknowledged that only electronic records were produced (concerning automated medication packaging systems; see Request No. 1 of Schedule A attached to JVM's subpoena). Therefore, there are at the very least invoices, purchase orders, and other business records from which the electronic records were created that were not produced. Automed said at the meet and confer that it would be onerous and unreasonable to produce those underlying records. If Automed assures JVM at deposition that the electronic records accurately reflect the full scope of sales of the products that are referred to in JVM's document subpoena, JVM does not need the underlying documents. Otherwise, the underlying records should be produced. In view of the low numbers of machines sold, JVM does not agree that producing the underlying records would be onerous.

Furthermore, it appears that Automed has only provided responsive documents related to sales of automated medical packaging systems sold by Plaintiff Yuyama, not concerning sales of medication dispensing cassettes/tablet feeders (Req. No. 2), "consumables" such as packaging, printer cartridges (Req. No. 3), and replacement parts (Req. No. 4) for such machines. We assume that Automed sold no such items based on your response. If our assumption is incorrect, responsive documents must be produced.

Clients\1328.yym.jvm\MLS2Bizar-20080418

1

The reasons for the requested sales documents and information are that: (1) the patent in suit previously provided to you involves tablet feeders for automated medical packaging systems; and (2) Yuyama takes the position that it is entitled to damages, including lost profits and reasonable royalties, regarding JVM's sales of each of the foregoing categories of products (based on the theory of "convoyed" sales).

We assume from Automed's non-responses to Request Nos. 5 through 9 that there are no responsive documents. If our assumption is incorrect, please advise by April 21, 2008, and produce responsive documents.

Your short quote from Judge Bredar's order is taken out of context and relates to a situation not analogous to this one. JVM's decision to wait to pursue additional documents in preparation for the recently noticed depositions does not constitute a waiver. There has been no prejudice to Automed. It would have been to Automed's benefit in fact if the lawsuit had settled in the interim. Nor have you have cited any facts or authority to support your waiver theory.

As for your claims of overbreadth, they are unwarranted. Merely making the assertion is not enough. Automed is the primary U.S. distributor of Yuyama's products covered by the patent in suit, a U.S. patent which Yuyama claims JVM has infringed. Automed stands to benefit greatly from stopping JVM's competitive activities in the U.S. market, as does Yuyama. Automed thus should reasonably have expected to be subject to discovery from JVM. JVM's requests are specifically tailored to information that Yuyama has made at issue in its patent infringement lawsuit. Many of the documents and much of the information sought in the F.R.Civ.P. 30(b)(6) deposition was unknown to Yuyama but that is not required. JVM is not bound to rely solely on Yuyama's representations in discovery.

As discussed at the meet and confer, and as alluded to in my previous letter to you, JVM is seeking documents (and information) in three main categories: (1) Yuyama's damages claims; (2) prior art regarding invalidity under 35 U.S.C. 102 and 103 (such as sales prior to December 16, 1996); and (3) patent marking under 35 U.S.C. 287 (regarding devices sold or offered for sale after September 8, 1998.

Regarding the limitations Automed attempts to place on responding to the subpoenas, those demands are rejected and unwarranted. Automed must appropriately respond to the subpoena or be in contempt of court. If Automed makes a reasonable request for a specific limitation on document production, or producing a witness under F.R.Civ.P. 30(b)(6), JVM will seriously consider it. But since, as Automed admitted at the meet and confer and in its April 16 letter, Automed has not yet conducted a preliminary inspection to determine what the full scope of the documents and information in Automed's possession would be. As for the allusion to obtaining the documents or information from Yuyama, JVM is not required by law to rely solely on Yuyama to obtain discovery and, in any event, Yuyama disclaimed knowledge of several of these categories of documents and information.

2

As for the categories of information related to the deposition subpoena, it is natural that many of them correspond to the document categories. After all, those categories relate to the issues in the patent infringement suit raised by Yuyama, Automed's joint venturer in the U.S. automated tablet dispenser market. Automed is hardly a disinterested observer as you seem to intimate. If Automed has a proposal to minimize the burden, the time to raise it is now. Based on what Automed suggested was the scope of responsive discovery at the meet and confer, the deposition will not be a long one, probably about one-half day.

As I informed you at the meet and confer, we are not talking about millions of widgets here. Instead, as Automed's sales since 2000 in the documents already produced suggest, the quantities of the expensive automated tablet dispensing machines (generally costing at least tens of thousands, and sometimes more than $100,000, per unit) are probably in, at most, the hundreds or low thousands of units. The parts and accessories sales, if there are any, are similarly limited and so would not be as extensive or burdensome as you seem to suggest. In fact, the required search and inquiry will probably not take a substantial period of time. In any event, Automed, a party that stands to benefit greatly from the Yuyama lawsuit if it is successful, should not be permitted to plead over burdensomeness to respond to relevant discovery requests.

Regarding another issue raised at the meet and confer, we have thought it over, and concluded that a deposition on written questions would not be workable here, as is ordinarily the case.

Please respond to us fully about all of the outstanding issues by 5:00 p.m. EST on Tuesday, April 22, 2008, as we discussed at the meet and confer.

Sincerely,

PARK LAW FIRM

Mark L. Sutton

MLS/mc

3

EXHIBIT J

**Buchanan Ingersoll & Rooney PC**
Attorneys & Government Relations Professionals

1835 Market Street
14th Floor
Philadelphia, PA 19103-2985

T 215 665 8700
F 215 665 8760
www buchananingersoll com

Steven E. Bizar
215 665 3826
steven.bizar@bipc com

April 23, 2008

**VIA ELECTRONIC MAIL AND FIRST-CLASS MAIL**

Mark L. Sutton, Esquire
Park Law Firm
3255 Wilshire Blvd, 11th Floor
Los Angeles, CA 90010
mlsutton@parklaw.com

     Re:   Yuyama Mfg. Co. v. JVM Co.

Dear Mr. Sutton:

     As we discussed at our meet-and-confer session on April 18, we have gathered additional information relating to the documents that make up the "three main categories" you identify in your letter of April 18.

     We have already turned over those sales records for the Yuyama machines themselves that are available on our electronic system, installed in 2000. We are exploring the possibility of generating similar reports for the cassettes and consumables you have requested. These product categories and sales are much more numerous and require more effort to produce than the device records; however, at this time my client feels that it will probably be able to produce such a summary report, assuming the products and categories in question can be specifically associated with Yuyama devices. We are also carrying out a separate search for current, electronically stored marketing materials and to determine if any sales projections exist that are broken out by brand and category in a way that would make them responsive to your requests.

     As far as patent marking is concerned, I am informed that my client has not carried out any such patent marking itself, and so has no responsive documents.

     All other materials you have requested, including the paper records of the transactions you already have in electronic form, and all information on transactions from before the installation of the current electronic systems in 2000, may or may not be in the custody or control of AutoMed. If such documents exist, they would be in AutoMed's warehouse storage, containing what our client estimates are several hundred boxes of documents dating back to at least 1995, none of which are indexed and a significant number of which appear not to be adequately labeled. While the volume of documents to be processed alone would present a burden to our client, the fact that JVM waited seven months to begin this process, and that it

April 23, 2008
Page - 2 -

therefore expects these hundreds of boxes to be reviewed, processed, and produced in the space of a few weeks, greatly increases the burden and expense.

As your letter correctly states, JVM is not required by law to "rely solely on Yuyama" in seeking evidence. However, JVM is required by the Federal Rules to avoid seeking discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). JVM also has a duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to" a subpoena. Fed. R. Civ. P. 45(c)(1). It is not true that AutoMed is "not permitted to plead over burdensomeness" because of an alleged benefit that it might gain from Yuyama's lawsuit. As a non-party to this litigation, AutoMed is clearly entitled to the protection of Rule 45. This is a question I have litigated extensively on behalf of AmerisourceBergen Corp. and its subsidiaries, and will litigate again if necessary.

However, in the interest of resolving this dispute, we will propose the following compromise:

- AutoMed will produce a summary from its electronic systems of sales of Yuyama accessories and cartridges, in so far as these can be determined to be specific to Yuyama products. AutoMed will provide an affidavit or deposition on written questions to the effect that this summary, and the summary previously produced, reflect all sales to the best of AutoMed's knowledge. AutoMed will bear all reasonable expenses associated with this additional electronic production.

- AutoMed will undertake to review the warehoused documents and gather those documents reflecting sales of Yuyama dispensing products, cartridges, and accessories before 2000, as well as any archived paper marketing materials and sales projections that make separate reference to Yuyama products.

- JVM will agree to pay for the costs of discovery for all non-electronic documents, which may include the cost of sending an attorney or paralegal to AutoMed's warehouse to perform the initial document gathering and review; shipping and copying expenses; and reasonable attorneys' fees for the production of potentially responsive documents.

- JVM will agree to treat all documents produced by AutoMed as "Highly Confidential" under the terms of the protective order entered in your case.

- AutoMed will produce one corporate 30(b)(6) witness, to testify on any questions raised by the document production that cannot be resolved by written questions or by other means. The deposition will take place after document discovery is complete.

April 23, 2008
Page - 3 -

Once we reach a final agreement, we will proceed with the search as expeditiously as possible and produce documents on a rolling basis as they are gathered and reviewed; however, we expect that, due to the volume of documents that must be searched, this process will take a minimum of three weeks.

Finally, your assertion that AutoMed will be "in contempt of court" if it fails to turn over all requested documents without conditions is simply incorrect and betrays a fundamental misunderstanding of the third-party discovery process in the federal courts.  Under the Federal Rules of Civil Procedure, you are not entitled to receive or inspect any documents over our objections, made at the time of the original subpoena, without a court order.

If these terms are agreeable to you, we can begin the data and document gathering process at once.  Please let me know what you plan to do at your earliest convenience so that we can avoid any further unnecessary delay.

Very truly yours,

Steven E. Bizar

SEB/

cc:   Chong H. Roh, Esquire (by electronic mail and first-class mail)
      Christopher Hapka, Esquire
      Jonathan Sturz, Esquire

# EXHIBIT K

| | |
|---|---|
| Subj: | **FW: [FWD: re: Yuyama v. JVM]** |
| Date: | 5/2/2008 3:02:19 PM Central Daylight Time |
| From: | Sutmls@aol.com |
| To: | RA2LAW |

Ex. K

**From:** mlsutton@parklaw.com [mailto:mlsutton@parklaw.com]
**Sent:** Friday, May 02, 2008 12:05 PM
**To:** sutmls@aol.com
**Subject:** [FWD: re: Yuyama v. JVM]

-------- Original Message --------
Subject: re: Yuyama v. JVM
From: mlsutton@parklaw.com
Date: Sun, April 27, 2008 10:45 pm
To: steven.bizar@bipc.com
Cc: Chong Roh <chroh@parklaw.com>, mschoi@parklaw.com

Dear Mr. Bizar:

This is in response to your letter dated April 23, 2008, concerning the subpoenas served by JVM on AutoMed in 2007 and early this month.  Your letter was responsive to our meet and confer on April 18, 2008, and my letter to you of the same date.

Your claim that "JVM waited seven months to begin this process" is not accurate.  The documents referred to in your letter were specifically requested in a subpoena served on your client seven months ago, namely categories 2 (cassettes), 3 (consumables) and 4 (spare parts), for only the years from December, 2000, forward and the years 1994 and 1995.  The later period was, according to your letter, available in electronic form (i.e., since 2000).  Moreover, the additional records are for only two years (namely, 1994 and 1995), not all years prior to 2000.  Therefore, the delay concerning the failure to produce these records is, in our view, AutoMed's responsibility.

In any event, the requests are narrowly drawn to obtain relevant evidence for the lawsuit and are not unduly burdensome as AutoMed asserts.  JVM is willing to conduct the search of AutoMed's records itself, in order to remove any perceived burden.  Please let us know immediately if AutoMed will agree with that approach.  JVM will not agree to pay for AutoMed's attorney and other expenses to produce the requested documents, as you have demanded.  If AutoMed refuses our offer and insists on conducting the search itself, AutoMed should have to pay its own expenses.  As Yuyama's U.S. distributor, this discovery from AutoMed concerning alleged infringement of Yuyama's U.S. patent is a reasonable expense for AutoMed to expect to incur.

As for Automed's offer to provide an affidavit or answers by a deposition on written questions, JVM declines to accept the offer.  JVM needs to obtain too much information to use those forms of information and discovery, and also needs testimony that would be admissible at trial.

JVM agrees to treat all documents as "Highly Confidential" pursuant to the protective order subject only to agreement of both parties or the possibility of a court order to remove or reduce the confidentiality, if JVM deems it necessary (a seemingly unlikely scenario).

We propose that JVM's inspection of documents take place on Friday, May 2, 2008, and that the deposition occur on May 5, 2008, at a location proximate to your client's place of business.

Please respond to this email by the end of the day on Monday, April 28, 2008.

Friday, May 02, 2008     CompuServe: RA2LAW

Mark Sutton

# EXHIBIT L

**Buchanan Ingersoll ⚘ Rooney** PC
Attorneys & Government Relations Professionals

1835 Market Street
14th Floor
Philadelphia, PA  19103-2985
T 215 665 8700
F 215 665 8760
www.buchananingersoll.com

Steven E. Bizar
215 665 3826
steven.bizar@bipc.com

April 28, 2008

**VIA ELECTRONIC MAIL AND FIRST-CLASS MAIL**

Mark L. Sutton, Esquire
Park Law Firm
3255 Wilshire Blvd, 11th Floor
Los Angeles, CA 90010
mlsutton@parklaw.com

     Re:   <u>Yuyama Mfg. Co. v. JVM Co.</u>

Dear Mr. Sutton:

     I write in response to your email of this morning, responding to my letter of April 23, 2008, offering to produce certain documents in the above-captioned case following our meet and confer session, held on April 18, 2008.  I am disappointed that, despite my client's good faith efforts to resolve this dispute, JVM has yet to make any substantial effort to avoid imposing an undue burden on non-parties, or in fact to even acknowledge that it has such a responsibility.

     My statement in my letter of April 18 that "JVM waited seven months to begin" the meet and confer process was in fact accurate.  AutoMed promptly notified you of its objections at the time the initial production was made.  Under the Federal Rules, if you disagree with objections made by a subpoenaed non-party, it is your responsibility to raise the matter with the non-party or the Court.  Under no reading of the Federal Rules are subpoena recipients required to respond over their own objections in the absence of a court order, or to encourage the serving party to pursue the matter more aggressively.

     Following our meet and confer session, I instructed my client, as a show of good faith, to begin gathering any available electronic data on sales of "consumables" associated with Yuyama hardware. I have now received this information from my client and expect to be able to send you a CD containing this information within a day or two.  AutoMed is also in the process of gathering electronically stored marketing materials that it hopes to be able to produce shortly.  Please reply with a copy of the current service list for your litigation so that I can ensure that these documents are distributed appropriately to all parties.  As already indicated, my client considers this material to be "Highly Confidential" under the terms of the protective order entered in your case.

April 28, 2008
Page - 2 -

As you will see, this sales data consists of more than 32,000 line item entries, encompassing more than 900,000 individual consumable products sold. The sheer volume of this information is further evidence that any attempt to review and gather equivalent paper discovery would in fact impose a significant burden on my client, a non-party to your litigation. Your offer to gather these documents yourself is not acceptable to AutoMed, given that you represent a business competitor. Instead, we repeat our previous offer: we will perform any reasonable, non-duplicative document gathering and production requested by JVM in a narrowed set of discovery requests if JVM agrees to reimburse our reasonable expenses, such as are customarily awarded by courts in third-party discovery cases.

Your repeated assertions that AutoMed should reasonably expect to incur the costs of discovery in a lawsuit to which it is not a party and in which it has no interest, are simply wrong as a matter of law. All non-parties are entitled to the protections of Rule 45(c), and AutoMed, having made all discovery it considers not unreasonably burdensome given your explanation at the meet and confer, will not bear the burden of any additional discovery. I consider your continued refusal to admit that you have a responsibility to treat AutoMed differently than you would a party with respect to discovery as a sign of bad faith on your part.

As for your testimonial subpoenas, neither of your objections to a deposition on written questions are convincing. A deposition on written questions is "admissible at trial" under the same conditions as a deposition on oral questions, and are capable of gathering just as much information, with much less burden to our client. As you have consistently failed to identify any information that could be obtained from a witness that would not also be obvious from the face of the documents produced, I can see no good faith reason why JVM would need to burden a party with a last-minute testimonial subpoena and AutoMed, if necessary, will seek appropriate protection from the Court.

Very truly yours,

Steven E. Bizar

SEB/

cc:     Chong H. Roh, Esquire (by electronic mail and first-class mail)
       Christopher Hapka, Esquire
       Jonathan Sturz, Esquire

# EXHIBIT M

| | |
|---|---|
| **Subj:** | **FW: [FWD: re: Yuyama Mfg. Co. v. JVM Co.] (Bizar)** |
| **Date:** | 5/2/2008 3:02:17 PM Central Daylight Time |
| **From:** | Sutmls@aol.com |
| **To:** | RA2LAW |

Ex. M

**From:** mlsutton@parklaw.com [mailto:mlsutton@parklaw.com]
**Sent:** Friday, May 02, 2008 12:01 PM
**To:** sutmls@aol.com
**Subject:** [FWD: re: Yuyama Mfg. Co. v. JVM Co.] (Bizar)

-------- Original Message --------
Subject: re: Yuyama Mfg. Co. v. JVM Co.
From: mlsutton@parklaw.com
Date: Mon, April 28, 2008 6:59 pm
To: "Bizar,Steven" <steven.bizar@bipc.com>
Cc: "Hapka,Christopher" <chris.hapka@bipc.com>, chroh@parklaw.com

Dear Mr. Bizar:

This is in response to your letter dated today, April 28, 2008.

Your letter mischaracterizes the facts.  JVM has offered a solution to the expense issue that is more than in good faith and is quite reasonable, namely that JVM bear the expense of reviewing and copying the archived documents by having its attorney and paralegals do it.  As you have acknowledged, the post-2000 documents are easily accessible in electronic records.  Your client's objection to the foregoing approach for the 1994 and 1995 records is inappropriate.  The confidentiality protective order that JVM has agreed to permit will prevent any competitive advantage to JVM.  JVM will not be permitted to see any information designated highly confidential/attorneys eyes only.  Thus, by its proposal, JVM has both made a "substantial effort to avoid imposing [the perceived] ... undue burden" on AutoMed.  What JVM does not acknowledge is that the perceived burden is "undue," especially in view of JVM's proposal.

Your attempt to ramp up the volume of discovery by referring to "line item entries" is not persuasive.  The vast majority of "consumables" consist of packets of individual packages for patient doses of pharmaceutical tablets.  Although the shear numbers are high, that is true because a particular machine can generate so many doses in a given day.  The records are very likely to group together large orders of such "consumables."  In any event, the burden would be on JVM to decide how to proceed if the burden is high enough, under JVM's proposal.  AutoMed's claim of JVM's competitive advantage is a red herring in view of the protective order.

Your claim that AutoMed has "no interest" in the lawsuit is meritless.  The primary relief sought in this lawsuit is to stop alleged patent infringement in the U.S., a result which would arguably benefit AutoMed at least as much as Yuyama because Yuyama has worldwide business regarding the relevant products, not merely U.S. business.  You cite no authority for your claim that JVM is "wrong as a matter of law." F.R.Civ.P. 45(c) requires JVM to take "reasonable steps" to avoid "undue" burden.  JVM has done so.  If AutoMed refuses the "reasonable steps," it cannot hide behind its perceived "undue" burden, according to the express provisions of Rule 45.

As for the proposed deposition on written questions, if you are a litigator as you intimate, you know that procedural device is very rarely used because it prevents meaningful follow up questions to clarify previous answers or to prevent evasion, especially regarding a party with an interest in the outcome of the lawsuit such as AutoMed.  Even where the third party is completely neutral, the procedure is almost never used because it does not work.  Furthermore, there are substantial questions that may have no documents connected with them such as the knowledge of the witness regarding patent marking concerning Yuyama machines which have been sold through

but were observed, sales of machines during relevant time periods for which records do not exist or are lost, etc.

You should be aware that there are categories of requested documents that we have not discussed, such as advertising materials.

If AutoMed does not agree to drop its demand for payment of its attorney and paralegal fees and other expenses, JVM is left with no alternative but to request relief from the Court.

Mark Sutton

-------- Original Message --------
Subject: Yuyama Mfg. Co. v. JVM Co.
From: "Hapka, Christopher" <chris.hapka@bipc.com>
Date: Mon, April 28, 2008 1:35 pm
To: <mlsutton@parklaw.com>
Cc: <chroh@parklaw.com>, "Bizar, Steven" <steven.bizar@bipc.com>

Please see the attached correspondence from Steven Bizar.

---

Christopher Hapka
Buchanan Ingersoll & Rooney PC
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Telephone: 215-665-4016
Facsimile: 215-665-8760
E-Mail: hapkacm@bipc.com
Website: www.bipc.com

TAX ADVICE DISCLAIMER: Any federal tax advice contained in this communication (including attachments) was not intended or written to be used, and it cannot be used, by you for the purpose of (1) avoiding any penalty that may be imposed by the Internal Revenue Service or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein. If you would like such advice, please contact us.

Above email is for intended recipient only and may be confidential and protected by attorney/client privilege.
If you are not the intended recipient, please advise the sender immediately.
Unauthorized use or distribution is prohibited and may be unlawful.

# EXHIBIT N

# Buchanan Ingersoll &Rooney PC
### Attorneys & Government Relations Professionals

1835 Market Street
14th Floor
Philadelphia, PA  19103-2985
T 215 665 8700
F 215 665 8760
www.buchananingersoll.com

**Christopher M. Hapka**
215 665 4016
chris.hapka@bipc.com

May 1, 2008

**VIA OVERNIGHT MAIL**

Mark L. Sutton, Esquire
Park Law Firm
3255 Wilshire Blvd, 11th Floor
Los Angeles, CA 90010
mlsutton@parklaw.com

      Re:    <u>Yuyama Mfg. Co. v. JVM Co.</u>

Dear Mr. Sutton:

     Enclosed is the supplemental production we referred to in our letter of April 28, 2008, comprising sales information for consumables as well as marketing materials and product manuals from current files.

           Very truly yours,

           Christopher M. Hapka

CH/

cc:    Chong H. Roh, Esquire (by electronic mail and first-class mail w/o encl.)
       Christopher Hapka, Esquire (internal)
       Jonathan Sturz, Esquire (by first-class mail w/o encl.)
       Torsten Kracht, Esquire (by overnight mail w/encl.)



Slip Copy                                                                                                              Page 1
Slip Copy, 2007 WL 2177460 (N.D.Cal.)
(Cite as: Slip Copy, 2007 WL 2177460)

**H**Lopez v. Horel
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Jose Carlos LOPEZ, Plaintiff,
v.
HOREL (warden), Defendant.
No. C 06-4772 SI (pr).

July 27, 2007.

Jose Carlos Lopez, Crescent City, CA, pro se.
Michael James Quinn, California State Attorney General's Office, Correctional Law Section, San Francisco, CA, for Defendant.

### ORDER RE. MISCELLANEOUS REQUESTS, DISCOVERY, AND REFERRING CASE TO MEDIATION PROGRAM

SUSAN ILLSTON, United States District Judge.

A. *Miscellaneous Requests From Plaintiff*

**\*1** On May 10, 2007, the court granted partial summary judgment in defendant's favor and ordered the parties to each file status reports no later than June 22, 2007. Plaintiff did not file the status report by the deadline and instead filed several other documents which are now before the court for consideration.

Plaintiff filed two motions for appointment of counsel. (Docket # 33, # 38.) These motions are his third and fourth requests for the court to appoint counsel for him. *See* Docket # 3, # 8. The due process claim remaining for trial is relatively straightforward (i.e., whether plaintiff was allowed to present his views to the decision-maker in connection with his validation as a gang affiliate), and there is not much discovery

remaining to be done. Having considered the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved, the court concludes that exceptional circumstances requiring the appointment of counsel are not present here. *See Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir.1986). The motions for appointment of counsel are DENIED. (Docket # 33, # 38.)

Plaintiff requested an extension of time to file his status report, claiming that he needed to have an answer to his motions for appointment of counsel and needed the court to "inform plaintiff in layman terms exactly what this court is requesting."Plaintiff now has the court's ruling on his recent motions for appointment of counsel. The court already explained what it wanted the parties to include in their status reports: each party was directed to file and serve a status report "indicating what discovery remains to be done, the amount of time needed for discovery, whether any further motions will be filed, when they will be ready for trial, and the expected length of the trial."Order Granting Partial Summary Judgment, p. 10. Plaintiff also now has the benefit of having seen defendant's status report, which was filed a month ago. Plaintiff's application for an extension of time is GRANTED. (Docket # 34.) Plaintiff's status report, received at the court on July 23, 2007, will be accepted. Plaintiff's status report is, however, so vague and uninformative that it is virtually worthless in aiding the court in case management. *See* Plaintiff's Status Report dated July 19, 2007 (plaintiff reports that he wants to do a deposition upon written questions and "may file additional discovery" of an unidentified sort, that he is "not sure when discovery will be completed," that he may file "additional motions" of an unidentified sort, and that he is "not sure" when he will be ready for trial).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2177460 (N.D.Cal.)
**(Cite as: Slip Copy, 2007 WL 2177460)**

Plaintiff filed a second motion for leave to file a motion for reconsideration. Plaintiff's motion is based on the premise that documents used to validate him as a gang member or associate must show that he was engaged in or directed criminal acts. *See* Motion for Leave To File Reconsideration, p. 4. Plaintiff is wrong on the law: a document need not show that the inmate engaged in or directed actual criminal activity for that document to be used to validate an inmate as a gang member or associate. Although evidence of criminal activity may be used to validate an inmate, it is not the only kind of evidence that may be used. *See*15 Cal.Code Regs. § 3000 ("gang" defined), § 3378(c) (gang involvement investigation and sources).[FN1] Because plaintiff's legal premise is wrong, his motion fails. The second motion for leave to file a motion for reconsideration is DENIED. (Docket # 37.) The court will not entertain any further motions for reconsideration from plaintiff.

> FN1. Plaintiff also argues that the settlement agreement in *Castillo v. Alameida*, N.D. Cal. Case No. C 94-2847 MJJ, supports his position. That argument has no merit because the settlement agreement-the existence of which the court can take judicial notice-does not state that there must be a showing that an inmate engaged in or directed actual criminal activity to be validated. Moreover, the settlement agreement does not provide a basis for a § 1983 claim for relief because it did not determine that there was any constitutional violation in the validation process, and, even if it did, a settlement agreement would not provide a right secured by the Constitution or laws of the United States, the violation of which is a necessary element of a § 1983 claim. Further, plaintiff was validated as a gang affiliate months before the *Castillo* settlement agreement was

executed in September 2004. The *Castillo* settlement agreement contemplated prospective changes and acknowledged that it would take several months for those changes to be implemented.

B. *Discovery*

**\*2** Plaintiff has sent to the court a letter enclosing discovery requests. The court generally is not involved in the discovery process and only becomes involved when there is a dispute between the parties about discovery responses. Discovery requests and responses normally are exchanged between the parties without any copy sent to the court. *See*Fed.R.Civ.P. 5(d) (listing discovery requests and responses that "must not" be filed with the court until they are used in the proceeding or the court orders otherwise). Only when the parties have a discovery dispute that they cannot resolve among themselves should the parties even consider asking the court to intervene in the discovery process. The court does not have enough time or resources to oversee all discovery, and therefore requires that the parties present to it only their very specific disagreements. To promote the goal of addressing only very specific disagreements (rather than becoming an overseer of all discovery), the court requires that the parties meet and confer to try to resolve their disagreements before seeking court intervention. *See*Fed.R.Civ.P. 37(a)(2)(B); N.D. Cal. Local Rule 37. Where, as here, one of the parties is a prisoner, the court does not require in-person meetings and instead allows the prisoner and defense counsel to meet and confer by telephone or exchange of letters. Although the format of the meet-and-confer process changes, the substance of the rule remains the same: the parties must engage in a good faith effort to meet and confer before seeking court intervention in any discovery dispute.

Plaintiff filed a request for production of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

documents. As explained in the preceding paragraph, plaintiff does not need to and should not be filing such discovery requests. They should be sent directly to defense counsel without any involvement of the court.

Plaintiff also filed a "motion for a court order granting plaintiff's motion to serve two voluntarily request for affidavit via mail to IGI lieutenant J. Sareli and CCIII W. Wilson."The motion is DENIED as unnecessary. Plaintiff does not need court permission to send documents to CDCR employees, and he does not show a basis for the court to compel those non-parties to answer plaintiff's request for an affidavit. Also, the procedure plaintiff is trying to use is not one of the formal discovery tools permitted by the Federal Rules of Civil Procedure. To the extent plaintiff wants non-parties to answer questions, an oral deposition is the normal discovery tool to use to obtain such answers. He does not need court authority to conduct an oral deposition.

Plaintiff also filed a "motion for order granting plaintiff's motion to file a 'deposition upon written questions' to defendant."The motion is DENIED as unnecessary because plaintiff does not need court permission to do such a deposition. If plaintiff wants to depose defendant on written questions, plaintiff needs to set up such a deposition, arrange for a court reporter and arrange for the attendance of the witness.<u>FN2</u>It is not defendant's obligation or the court's obligation to do so. As the discussion in the footnote indicates, plaintiff's proposal to not divulge his proposed questions to defense counsel in advance of the deposition is not possible under the Rule 31 procedure.

> FN2. The **deposition** upon **written questions** procedure may sound like an inexpensive way for a prisoner to do discovery but usually is not. A **deposition** upon **written questions** is covered by <u>Rule 31 of the Federal Rules of Civil Procedure</u>. The **deposition** upon

**written questions** basically would work as follows. The prisoner would send out a notice of deposition that identifies (a) the deponent (i.e., the witness), (b) the officer taking the deposition, (c) a list of the exact questions to be asked of the witness, and (d) the date and time for the deposition to occur. The defendant would have time to send to the prisoner written cross-examination questions for the witness, the prisoner would then have time to send to defendant written re-direct questions for the witness, and the defendant would have time to send to the prisoner written re-cross-examination questions for the witness. When all the questions-without any answers-are ready, the prisoner would send them to the deposition officer and the officer would take the deposition of the witness. (The deposition officer can be any person authorized by law to administer oaths, *see*<u>Fed.R.Civ.P. 28(a)</u>, such as a notary public and need not be a court employee.) The questions are read by the deposition officer, the responses are reported by a court reporter and the transcript is prepared as it would be for an **oral deposition**. The deposition officer does not stray from the written script of questions and asks only those questions that are on the list from the prisoner and defendant. To depose a non-party on written questions, that witness must be subpoenaed. To obtain a **deposition** upon **written questions**, the prisoner thus has to pay the witness fee, deposition officer fee, court reporter fee, and the cost of a transcript of the proceedings. The procedure is not much cheaper than an **oral deposition** unless there are substantial travel expenses that would be incurred to bring the witness to the prisoner or the prisoner to the witness. In addition to the cost, the evidence-gathering ability in such a deposition is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                     Page 4
Slip Copy, 2007 WL 2177460 (N.D.Cal.)
(Cite as: Slip Copy, 2007 WL 2177460)

quite limited. The requirement that the questions all be written and shared in advance means that there is no opportunity for follow-up questions when a witness makes a statement that is unexpected. Poorly worded questions will often result in useless answers-a problem that makes procedure particularly difficult for an unrepresented litigant.

**\*3** The parties should proceed with their discovery efforts, but it appears to the court that the amount of discovery remaining to be done is quite limited. Accordingly, the court will refer this case to Magistrate Judge Vadas for mediation notwithstanding the ongoing discovery.

## C. *Referral To Magistrate Judge Vadas*

The court has established a Pro Se Prisoner Mediation Program under which certain prisoner civil rights cases may be referred to a neutral magistrate judge for prisoner mediation proceedings. The proceedings will consist of one or more conferences as determined by the mediator. Good cause appearing therefor, this case is now referred to Magistrate Judge Vadas for mediation proceedings pursuant to the Pro Se Prisoner Mediation Program. The proceedings will take place within 90 days of the date this order is filed. Magistrate Judge Vadas will coordinate a time and date for a mediation proceeding with all interested parties and/or their representatives and, within 5 days after the conclusion of the mediation proceedings, file with the court a report for the prisoner mediation proceedings.

The clerk will send to Magistrate Judge Vadas in Eureka, California, a copy of the case file for this action.

IT IS SO ORDERED.

N.D.Cal.,2007.

Lopez v. Horel
Slip Copy, 2007 WL 2177460 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



P.H. Intern. Trading Co. v. Christia Confezioni S.p.A.

N.D.Ill.,2004.

Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois, Eastern Division.

P.H. INTERNATIONAL TRADING CO. d/b/a Hana K Fashions Plaintiff,

v.

CHRISTIA CONFEZIONI S.P.A., an Italian corporation and FBLG, Inc., Defendants.

**No. 04 C 903.**

Sept. 24, 2004.

*MEMORANDUM OPINION AND ORDER*

COAR, Magistrate J.

**\*1** Plaintiff P.H. International Trading Co. d/b/a Hana K Fashions ("Hana K") sued defendant Christia Confezioni S.p.A. ("Christia"), an Italian corporation, in state court for a variety of state law claims including, among other claims, breach of contract, constructive fraud, fraud, promissory estoppel, and civil conspiracy. Christia removed the case to federal court and filed a motion to dismiss, challenging personal jurisdiction, venue, and asserting the doctrine of *forum non conveniens.*In support of its jurisdictional challenge, Christia submitted the declaration of Francesco Sorio, "an authorized representative of Christia," regarding Christia's contacts with Illinois. (Pl.'s Mot. Compel, Ex. A.) The district court subsequently extended

briefing on the motion to dismiss to allow the parties to take discovery on the jurisdiction issue. This matter is now before the court on *Plaintiff's Motion to Compel,* in which Hana K asks the court to compel (1) the deposition of Mr. Sorio and (2) the production of documents responsive to certain document requests. During the course of briefing the motion to compel, the parties represented that they are close to resolving the dispute regarding the document requests. Accordingly, this order addresses the motion to compel only as it relates to the deposition of Mr. Sorio. For the reasons explained below, the court grants plaintiff's motion to compel in part.

*ANALYSIS*

Christia opposes presenting Mr. Sorio for deposition on two grounds. First, Christia contends that Sorio's deposition is unnecessary for resolution of the motion to dismiss. The court disagrees. Christia presented an affidavit from Mr. Sorio in support of its motion to dismiss. Unless Christia intends to withdraw Mr. Sorio's affidavit, which is unlikely, Hana K is entitled to depose him regarding the substance of his declaration. Alternatively, Christia's suggests that if additional testimony is necessary, Hana K should take Mr. Sorio's deposition on written interrogatories. The court rejects that suggestion. Although a deposition on written interrogatories is appropriate in certain limited circumstances, the court finds it is not an adequate substitute for an oral deposition in this case. *Mill-Run Tours, Inc.,* 124 F.R.D. 547, 549-550 (S.D .N.Y.1989) (denying foreign defendants' request to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2004 WL 2538299 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2538299)

take depositions by written questions). Christia has failed to persuade the court that presenting Mr. Sorio for deposition would create a substantial hardship for Mr. Sorio or Christia. *Id.* at 549. Moreover, proceeding on written interrogatories denies plaintiff's counsel the opportunity to ask follow-up questions, observe the witness's demeanor, or evaluate his credibility. *Id.* Additionally, taking the deposition by written questions provides "an opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes." *Id.*

**\*2** Given the court's finding that Hana K is entitled to depose Mr. Sorio, the next issue is where the deposition should take place. Christia argues that the deposition should take place in Italy, whereas Hana K contends the deposition should take place in Chicago. In support of its position, Christia contends that "[t]he case law is clear that '[i]n the absence of *exceptional* or *unusual circumstances,* when a deponent resides a substantial distance from the deposing party's residence, the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even if the deponent is a party." ' (Def .'s Resp. at 5, *quoting Gen. Leasing Co. v. Lawrence Photo Graphic Supply, Inc.,* 84 F.R.D. 130, 131 (D.C.Mo.1979) (emphasis in original).) There is a general presumption that "the depositions of a corporation through its agents should be taken at the corporation's principal place of business." *Custom Form Mfg., Inc. v. Omron Corp.,* 196 F.R.D. 333, 336 (S.D.Ind.2000). "Nonetheless, 'the court has substantial discretion to specify the time and place of any deposition." ' *Id.* (citation omitted). Accordingly, " 'the presumption appears to be merely a decision rule that facilitates determination

when other relevant factors do no favor one side over the other." ' *Id.* (citation omitted). Notably, "[c]orporate defendants are frequently deposed in places other than the location of their principal place of business, especially when the deposition site is the forum most convenient to all parties and that which best serves the general interests of judicial economy." *Id.* at 338.

Here, the court finds that the interests of judicial economy favor either (i) taking the deposition via videoconference, or (ii) holding the deposition in Chicago rather than Italy. Taking the deposition via videoconference strikes the court as the most logical, economical solution because nobody is required to travel. Accordingly, the court strongly recommends that the parties arrange to take the deposition via videoconference, with plaintiff to bear the costs for the videoconference.

Alternatively, if either party has a reasonable objection to taking the deposition via videoconference or if a video deposition is not technologically possible, then the deposition shall take place in Chicago. As Hana K points out, both parties' attorneys are located in Chicago (in the same building, in fact). If the deposition is taken in Italy, both parties will incur lodging and travel expenses for their attorneys. *See id.* at 337 (travel expenses of attorneys are relevant to determining the location of the deposition). If, on the other hand, the deposition is taken here, Mr. Sorio and perhaps his Italian counsel will have to travel. That means at least two attorneys traveling to Italy, or Mr. Sorio and his Italian counsel traveling to Chicago. The travel issue thus either favors Chicago or results in a tie,[FN1] depending on which attorneys would attend the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

deposition. Although travel burdens are close under either scenario, the court exercises its discretion and rules that the deposition should take place in Chicago.[FN2] *See Fin. Gen. Bankshares, Inc. v. Lance, 80 F.R.D. 22, 23 (D.C.1978)* ("defendants having to appear for depositions at the place of trial are not unusual").

> FN1. If, however, plaintiff would also need to bring a court reporter to Italy (as plaintiff maintains), then there is no tie.

> FN2. Another reason favoring Chicago as the location is that by ordering the deposition to be taken here, the court avoids any sovereignty issues in the event a dispute arises and the court is asked to intervene. *Custom Form, 196 F.R.D. at 336*.

**\*3** The only remaining issue is who should pay the costs of Mr. Sorio's lodging and travel expenses in the event the deposition is taken in Chicago rather than via videoconference. Christia maintains that Hana K should be ordered to pay the travel and lodging expenses of Mr. Sorio and his Italian counsel. Under similar circumstances, some courts, in the interest of fairness, have ordered the party seeking the deposition to pay for the deponent's reasonable travel and lodging expenses. *See, e.g., Partecipazioni Bulgari, S.p.A. v. Meige, 1988 WL 113346, at \*2 (S.D.Fla.1988); Fin. Gen. Bankshares, 80 F.R.D. at 23*. Other courts have ordered the parties to split the costs. *See, e.g., Custom Form, 196 F.R.D. at 338*. Here, to avoid a windfall to either party, the court finds that the fair result is for each party to pay half of the reasonable travel and lodging

expenses for Mr. Sorio and his Italian counsel, if counsel's appearance is necessary.[FN3] With the deposition taking place in Chicago, if costs were not shared, Hana K would not incur any travel and lodging expenses, whereas Christia would incur the expenses for Mr. Sorio and Christia's Italian counsel to be present. That result is unfair to Christia. Conversely, requiring Hana K to pay all of the expenses for Mr. Sorio and Italian counsel would create a windfall to Christia because even if the if the deposition were taken in Italy, Christia would likely incur the expenses of its Chicago attorney to be present.

> FN3. To the extent Christia finds it necessary to have Italian counsel present, the court's order to split the travel and lodging expenses covers only one attorney.

*CONCLUSION*

Accordingly, plaintiff's motion to compel is granted to the extent plaintiff seeks the deposition of Mr. Sorio. The parties have seven days from the date of this order to notify the court whether the deposition will be taken via videoconference or in person in Chicago. In the event the deposition is taken in Chicago, the court requires each side to pay half of the reasonable travel and lodging expenses for Mr. Sorio and Christia's Italian counsel, if counsel's appearance is necessary.

N.D.Ill.,2004.
P.H. Intern. Trading Co. v. Christia Confezioni S.p.A.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2004 WL 2538299 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2538299)

Not Reported in F.Supp.2d, 2004 WL 2538299
(N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**H**In re Seroquel Products Liability Litigation

M.D.Fla.,2007.

Only the Westlaw citation is currently available.

United States District Court, M.D. Florida,
Orlando Division.

In re SEROQUEL PRODUCTS LIABILITY
LITIGATION.

**No. 6:06-md-1769-Orl-22DAB.**

Dec. 6, 2007.

## ORDER

DAVID A. BAKER, United States Magistrate Judge.

**\*1** This cause came on for consideration with oral argument on the following motions filed herein:

| MOTION: | PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF NON-PARTY DOCUMENTS [AS TO HARRIS INTERACTIVE, INC.] (Doc. No. 666) |
|---|---|
| FILED: | November 9, 2007 (originally filed September 28, 2007 in Southern District of New York) |

**THEREON** it is **ORDERED** that the Motion as to Harris Interactive, Inc. is **GRANTED** in part and **DENIED** in part as set forth below. The ruling as to the other non-parties is **DEFERRED** pending further consideration at the December 18, 2007 status conference.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 2
Slip Copy, 2007 WL 4287676 (M.D.Fla.)
(Cite as: Slip Copy, 2007 WL 4287676)

**MOTION:**

**FILED:**

**THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

Plaintiffs issued a subpoena and deposition on written questions to Harris Interactive, Inc. in connection with the *In re Seroquel* MDL, involving the anti-psychotic prescription drug manufactured by AstraZeneca. Plaintiffs allege they took Seroquel for a variety of mental disorders and allegedly suffered serious side effects including weight gain, hyperglycemia, and diabetes mellitus. Harris Interactive is a third-party vendor hired by AstraZeneca to provide marketing research related to Seroquel. Central to Plaintiffs' case is their theory that AstraZeneca, through its promotion of Seroquel, exaggerated the efficacy of Seroquel while downplaying the side effects and failed to provide physicians with critical safety information. Plaintiffs further allege that, through marketing campaigns, AstraZeneca promoted Seroquel for a number of "off-label" uses, and AstraZeneca has allegedly been reprimanded by the FDA for its false and misleading promotional activities.

Plaintiffs represent in their Motion to Compel (and supporting affidavit) that Harris Interactive conducted tracking studies and message recall for Seroquel marketing campaigns and provided quarterly attitudinal research understanding (ATU) reports, which analyzed physicians' therapy choices. Doc. No. 668. Plaintiffs also point to Harris Interactive's involvement in other Seroquel projects including, research of AstraZeneca's direct to consumer marketing campaigns, ways to

**NON-PARTY HARRIS INTERACTIVE, INC.'S MOTION FOR PROTECTIVE ORDER (Doc. No. 674)**
**November 9, 2007** (originally filed October 9, 2007 in Southern District of New York)

position Seroquel for treatment of anxiety disorders, research on negative ad campaigns related to the diabetes/ hyperglycemia warning on physician prescribing behavior and research on the Seroquel marketing campaigns' risk, awareness among physicians, and impact on physician prescribing habits. Doc. No. 668 at 5.

Plaintiffs served Harris Interactive at its office in New York on July 2, 2007. The subpoena required the documents be produced on July 30, 2007. The subpoena to Harris Interactive sought six categories of documents, including: contracts, communications, marketing materials, documents between Harris and AstraZeneca, or others relating to Seroquel; and documents reflecting the amount of money paid to Harris by AstraZeneca relating to professional services relating to Seroquel. Doc. No. 668. On July 20, 2007, Harris served written objections to the subpoena asserting the requested categories were vague, overbroad and unduly burdensome, and sought material that were confidential, proprietary, work product, attorney/client privilege, and is not reasonably related to the claims in the underlying matter. In its Response to the Motion to Compel (Doc. No. 676), Harris contends the requests are over-reaching and seek documents since 1986 to present (when the actual period may be 2000 to present). Doc. No. 676.

**\*2** At the hearing on the matter held on November 21, 2007, counsel for Harris Interactive represented to the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Court that Harris had narrowed the list to 25 electronically-maintained project list files that may contain information relevant to Plaintiffs' requests. Counsel projected that the cost for the files to locate, review and make production is $25,000. Harris maintained that it is not required to bear the entire costs of the production because it is a non-party; consequently, it requests that the Court require Plaintiffs to reimburse Harris for half of its expenses, which include attorneys' fees and internal costs for locating and preserving the files. The Court directed Harris to provide supplemental briefing on the issue of fees to be incurred and its entitlement to reimbursement.

On November 27, 2007, Harris filed a Supplemental Memorandum (Doc. No. 718) in which it contends it is entitled to recover the full amount of its fees expended to retrieve, identify and review the documents sought Plaintiffs, which it estimates to be $28,950 ($18,750 in attorneys fees for 50 hours of review) for the 25 project files identified. The 25 files relate to market research that Harris performed on behalf of AstraZeneca with respect to Seroquel, for which Harris generated approximately $3.7 million in fees. Doc. No. 718. Counsel, Philip Spellane, opines that all 25 electronic files contain detailed information that should be reviewed prior to production "in fairness to all involved in this litigation" and "given the nature of Plaintiffs' allegations in this action and the alleged involvement of Harris."Doc. No. 718.

**Standard of Review**

Rule 45 of the Federal Rules of Civil Procedure requires the Court to protect non-parties from "significant expense resulting from the inspection and copying commanded."FED.R.CIV.P. 45(c)(2)(B)."However, the required '[p]rotection from significant expense does not mean that the requesting party necessarily must bear the entire cost of compliance.... [A] non-party can be required to bear some or all of its expense where the equities of a particular case demand it.' " In re Law Firms of McCourts, No. M19-96 (JSM), 2001 WL 345233, at *1 (S.D.N.Y. Apr. 9, 2001) (quoting In re Exxon Valdez, 142 F.R.D. 380, 383 (D.D.C.1992)). In multi-district litigation, the court in charge of the consolidated proceedings has the power to rule on a motion to quash subpoenas. 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2459 (1991 & Supp.2007) (citing Wilmer, Cutler & Pickering & Goodwin Proctor LLP, 255 F.Supp.2d 1 (D.D.C.2003); In re Subpoena Issued to Boies, Schiller & Flexner LLP, 2003 WL 1831426, *1 (S.D.N.Y.2003)); see also Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F.Supp.2d 270, 275-76 (D.D.C.2002) (holding that § 1407 gave MDL judge in the District of Columbia the power to enforce subpoena duces tecum issued by the Middle District of Tennessee to non-party in that district) (collecting cases).

**\*3** For courts considering whether to order the reimbursement of costs related to non-party production, courts consider how expensive and time-consuming the compliance will be; the size and ability of the subpoenaed person to bear the costs itself; whether the expenses of compliance are part of the subpoenaed person's or firm's normal cost of doing business; whether and to what extent the serving party has made efforts to minimize the burden of compliance; and whether the court has denied similar motions for advancement of costs by other witnesses in the case. FEDERAL PROCEDURE, LAWYERS EDITION § 65:260 (citing Raio v. American Airlines, Inc., 102 F.R.D. 608, 39 Fed.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                          Page 4
Slip Copy, 2007 WL 4287676 (M.D.Fla.)
(Cite as: Slip Copy, 2007 WL 4287676)

R. Serv.2d 1331 (E.D.Pa.1984); *Ghandi v. Police Dept. of City of Detroit,* 74 F.R.D. 115 (E.D.Mich.1977); *United States v. International Business Machines Corp.,* 62 F.R.D. 526 (S.D.N.Y.1974); *Celanese Corp. v. E.I. duPont de Nemours & Co.,* 58 F.R.D. 606 (D.Del.1973)). In order to determine whether a nonparty to the suit should bear the costs of gathering and copying documents, courts should consider whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party and whether the litigation is of public importance. *See, e.g.,* In re Honeywell *International, Inc. Securities Litigation,* 230 F.R.D. 293 (S.D.N.Y.2003).

When a party from whom documents are sought is not a "classic disinterested non-party," as in *In re First American Corporation,* where the non-party was the auditor of the defendant corporation accused of bank fraud, the court can order that the non-party produce the documents at its own expense. *In re First Am. Corp.,* 184 F.R.D. 234, 241-42 (S.D.N.Y.1998). Although the accounting firm was not a party to the suit, it was deemed interested for the purposes of absorbing costs of compliance with the applicant's subpoena for documents. Finding the bank was not the "quintessential innocent, disinterested bystander," the court treated the auditor as interested, because it was substantially involved in the underlying transaction, and should have reasonably anticipated being drawn into subsequent litigation; as the auditor for a bank that had committed the "largest bank fraud in world history," the auditor's "involvement in subsequent litigation was virtually assured." *Id.* at 235. As a result, the auditor was reimbursed only $75,000 of its requested $210,990 of costs incurred in complying with the subpoena.

In another case involving reimbursement of costs from a non-party involved with the claims at issue, *In re Exxon Valdez,* the court analyzed the non-party American Petroleum Institute's ("API's") revenue from the Defendants and its overall revenue and ability to bear the production costs as "overhead," before ordering API to bear 29 percent of the total cost; this percentage was the same percentage as the proportion of its income attributable to the defendants and their principals. The court opined:

**\*4** Here, despite API's repeated attempts to distance itself from the *Valdez* litigation, it is clear that API and its members do have an actual interest in the outcome of that litigation. API's own documents reveal that it "represents over 250 companies involved in all aspects of the oil and gas industry." Respondents Exh. 5. At the hearing, API's counsel argued, somewhat disingenuously, that since the *Valdez* litigation affects only a small number of those 250 members, it is of little interest to API's other members or to the organization as a whole. Tr. 29-32. However, API's admission that 29 percent of its income comes from the *Valdez* defendants and their corporate principals weakens API's claim that it acted solely as a neutral third party during the negotiations, sheds some light on its immediate decision to cancel the production once the *Valdez* defendants openly objected, and materially distinguishes API from the pure non-party witness identified in Rule 45. Moreover, even if the relationship between API and the *Valdez* defendants were less substantial, it seems certain that the precedential value of the *Valdez* case is a matter of real concern to a large portion of the petroleum industry. Nor has API denied that this suit is of great public importance generally. Further, there can be little doubt that API, which in 1989 had gross receipts of $58 million and a net worth of $17 million, *see* Petitioners' Exh. B, would be able to absorb at least some of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

costs of production and copying. *Wilk v. American Medical Ass'n,* 28 Fed.R.Serv.2d 580 (D.D.C.1979) (given non-party professional association's "obvious and understandable substantial interest in the outcome," costs of compliance held to be "business overhead"). This is especially true in comparison with the financial situation of petitioners, who are five disparate classes of Native Alaskans, fishermen, business persons, property owners, and cannery workers affected by the spill. Thus, although new Rule 45(c) does require petitioners to bear the major portion of the costs of producing and copying the documents, API equitably should bear 29 percent of the total cost, the same percentage as the proportion of API's income attributable to dues paid by the defendants and their principals. This figure takes into account the special circumstances recited above, while still ensuring that API could easily and sufficiently protect itself from significant expense within the meaning of the Rule, by simply assessing this special expense to the defendants, who are its members and a principal source of its revenue.

142 F.R.D. 380, 383-84 (D.D.C.1992).

In this case, Harris has performed work for Seroquel marketing campaigns; analyzed physicians' therapy choices; and researched direct to consumer marketing campaigns and negative ad campaigns related to the diabetes/ hyperglycemia warning on physician prescribing behavior. *See* Doc. No. 668. Plaintiffs' claims directly involve physicians' prescribing behavior and therapy choices, with consumer choices and negative ad campaigns having an impact. It should come as no surprise to Harris that market research work it did for Seroquel would be relevant to Plaintiffs' claims and Harris should have reasonably anticipated being involved in the discovery process of subsequent litigation concerning the marketing/prescribing behavior it studied for Seroquel.

**\*5** Moreover, the cost can certainly be borne by Harris as overhead. According to (uncontroverted) publicly-available information Plaintiffs cite in their Motion, Harris is the twelfth largest market research firm in the United States and the thirteenth largest market research firm in the world, with 1,300 full-time employees and annual revenue of $211.8 million (as of October 2007). According to counsel for Harris, Harris generated revenue of $3.7 million from AstraZeneca on Seroquel related-work. Doc. No. 718. The projected expense of Harris's compliance is $28,950, of which $18,750 is for attorney's fees and $10,200 for internal costs. The entire expense of $28,950 is less than four fifths (4/5) of one percent of the revenue Harris generated from work on Seroquel products.

With respect to retrieval and review expenses (including attorneys' fees), Harris will bear those expenses itself (subject to any agreement it may have with its customer). Actual costs of duplication (electronic or otherwise) may be passed through to the parties (to be divided as they have agreed). All involved are directed to continue to cooperate to minimize the costs of retrieval and duplication, while providing documents with reasonable dispatch and in a reasonably convenient format.

**DONE** and **ORDERED.**

M.D.Fla.,2007.
In re Seroquel Products Liability Litigation
Slip Copy, 2007 WL 4287676 (M.D.Fla.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 6
Slip Copy, 2007 WL 4287676 (M.D.Fla.)
(Cite as: Slip Copy, 2007 WL 4287676)


END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.