IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YUYAMA MANUFACTURING CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  08 CV 2523 |
| v. | ) | |
| | ) | Judge Kennelly |
| JVM CO., LTD., | ) | |
| | ) | Magistrate Judge Cole |
| Defendant. | ) | |

**NON-PARTY AUTOMED'S MEMORANDUM IN OPPOSITION TO
JVM'S MOTION TO ENFORCE SUBPOENAS
AND IN SUPPORT OF ITS CROSS-MOTION TO QUASH
JVM'S SUBPOENA SEEKING DEPOSITION TESTIMONY**

## 1. INTRODUCTION

JVM Co., Ltd. ("JVM") has served two subpoenas on AutoMed Technologies, Inc. ("AutoMed") and now brings a motion to compel additional third-party discovery from AutoMed.    AutoMed has already substantially complied with the subpoena requesting documents, including the production of all readily available documents from its files, and has attempted to negotiate the terms of a deposition with JVM.    However, JVM, which has consistently refused to abide by, or even acknowledge, its duty under Rule 45 to minimize the burden of discovery on non-parties, has now moved to compel additional, burdensome discovery.

In response to JVM's subpoenas, AutoMed has produced all readily accessible documents, including all electronic documents and paper documents from its employees' current files.  The remaining documents at issue, if and to the extent they may even exist, are contained in a storage warehouse containing hundreds of boxes of documents dating back to at least 1995; they are not indexed, are inconsistently labeled, and would require a substantial investment of

time in order to gather, collect, and review.   (See Declaration of Peter Gilbert, GVP of Operations of AutoMed at ¶¶ 3-7, attached as Exhibit A).

AutoMed has made all reasonable discovery at its own expense, but, as the Federal Rules and case law envision, it has refused to subject itself to the significant burden and expense of this additional production unless part of the burden is borne by JVM.  Not only has JVM made no serious attempt to reduce the burden of these requests on AutoMed, it has refused even to admit that it has any such responsibility under Rule 45.   JVM has categorically rejected any compromise suggested by AutoMed and has refused to put forward any compromise of its own, instead insisting on the literal enforcement of its demands in the most intrusive and expansive manner possible, while at the same time increasing the expense and burden of production by waiting until the last possible minute to press its claims.

JVM has also requested a deposition of a corporate representative of AutoMed.  Contrary to JVM's assertion, AutoMed has not categorically refused to present a witness for such a deposition.  However, the subpoena as written fails to provide any reasonable indication of the scope of questioning to be expected, meaning that AutoMed would simply be unable to prepare or present a witness under Rule 30(b)(6), and JVM has consistently refused to present any more reasonable list or to explain what testimony it is actually seeking.  In addition, JVM has indicated that its most pressing questions involve the period of 1993-1995, a period for which AutoMed simply does not have any knowledgeable witnesses, and for which JVM already has an adequate witness in Duane Chudy, AutoMed's founder and a former (as opposed to current) employee, who despite JVM's assertions to the contrary has in fact already agreed to testify.  (See Declaration of Christopher Hapka, counsel for AutoMed, at ¶ 5, attached as Exhibit B).

JVM has failed to present any evidence that the probative value of this discovery would outweigh the clear burden imposed on AutoMed, especially since any relevant information is obtainable from Mr. Chudy or from Yuyama, a party to the litigation.  In fact, JVM did not seek a 30(b)(6) deposition of AutoMed until after its request for additional 30(b)(6) testimony of Yuyama was rejected by the Maryland District Court as "very untimely."  (Hapka Decl. Ex. 2). This Court should not allow JVM to impose the costs of its own delay on a non-party, and should not burden AutoMed with the costs of a document production that would be both burdensome and, ultimately, duplicative or irrelevant in the underlying case.

## 2.  FACTUAL BACKGROUND

This action concerns a lawsuit pending in the United States District Court for the District of Maryland against JVM.  On May 5, 2008, JVM moved this Court to compel AutoMed, which is not a party to the Maryland lawsuit, to produce additional documents beyond those AutoMed has already produced in this case.  AutoMed asks the Court to deny JVM's motion, and in addition moves this Court to quash JVM's subpoena seeking the deposition of a corporate representative of AutoMed, or modify it to condition any deposition on JVM's presenting a more reasonable list of topics on which a witness may be prepared.

JVM first sought third-party discovery from AutoMed by a subpoena dated May 23, 2007, which sought the discovery of nine categories of documents.  (Roh Decl., Ex. B).[1] AutoMed timely objected to these requests, and produced those documents not subject to its objections in August of 2007.  (Sutton Decl., Ex. E).  JVM did not respond to AutoMed's production or to its objections until April 9, 2008, seven months after AutoMed's production and nearly a year after service of the subpoena. (Hapka Decl., Ex. 1).

---

[1] "Roh Decl." and "Sutton Decl." refer to the declarations of Chong H. Roh and Mark L. Sutton submitted with JVM's Motion to Enforce Subpoenas.

Meanwhile, on or about March 26, 2008, JVM served a second subpoena on AutoMed, this time seeking the deposition of a corporate representative under Fed. R. Civ. P. 30(b)(6). (Roh Decl., Ex. C). While purportedly a deposition seeking testimony, the list of testimony sought was substantially identical to the list of documents requested in the May 2007 subpoena. JVM has consistently refused to provide an actual list of deposition topics or to give any other guidance that would allow JVM to intelligently prepare a witness.

Despite AutoMed's substantial compliance, in good faith, with all but the most burdensome of the subpoena's requests, JVM now brings this motion to enforce both subpoenas in their entirety.

## 3.  LEGAL ARGUMENT

The legal standards applicable to JVM's motion and AutoMed's cross-motion are familiar to the Court and well-settled. Under Fed. R. Civ. P. 45, the Court "shall quash or modify" a subpoena if it, *inter alia*, "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A), 45(c)(3)(A)(iv). This protection is ordinarily achieved by requiring that the requesting parties reimburse the non-party for some or all of the costs of production, in cases where the non-party may be spared unnecessary burden by the reimbursement of costs. *See, e.g., In re Exxon Valdez,* 142 F.R.D. 380 (D.D.C. 1992) (requiring payment of 71% of costs of compliance with third-party subpoena).

In the Seventh Circuit, a subpoena must be quashed if "the burden of compliance with it would exceed the benefit of production of the material sought by it." *Northwestern Memorial Hosp. v. Ashcroft,* 362 F.3d 923 (7th Cir. 2004). In deciding the instant motion, a District Court "must apply a balancing test to determine whether the need of the party seeking disclosure outweighs the adverse effect. . . . That is, the court must compare the hardship to the party or

person against whom discovery is sought, if discovery is allowed, with the hardship to the party

seeking discovery if discovery is denied." *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556

(7th Cir. 1984); *see also CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) (Court "must

evaluate such factors as timeliness, good cause, utility, and materiality").

### A.    Despite JVM's Assertions to the Contrary, AutoMed's Burden Must Be Considered

JVM has consistently refused to acknowledge that AutoMed, as a non-party, is entitled to

any consideration, because it ostensibly "stands to greatly benefit from the underlying lawsuit."

(JVM Mem. at 6). This claim is unsupported by the law of this Circuit. JVM cites only two

cases allegedly supporting this argument, both from District Courts in other circuits. However,

such a bright-line exception to the clear text of Rule 45 has never been adopted by this Court or

by any other court in the Seventh Circuit. As this Court has acknowledged:

> [I]t has been consistently held that "non-party status" is a significant factor to be
> considered in determining whether the burden imposed by a subpoena is undue. . .
> . Although discovery is by definition invasive, parties to a lawsuit must accept its
> travails as a natural concomitant of modern civil litigation. Non-parties have a
> different set of expectations. Accordingly, concern for the unwanted burden thrust
> upon non-parties is a factor entitled to special weight in evaluating the balance of
> competing needs.

*U.S. v. Amerigroup Illinois, Inc.*, 2005 WL 3111972, at *4-5 (N.D. Ill. Oct. 21, 2005).[2]

JVM has also failed to show that AutoMed will receive any significant benefit if Yuyama

prevails in this case. As a reseller, AutoMed is not entitled to any patent royalties or damages

that might be collected by Yuyama. (Gilbert Decl. at 9). Nor does AutoMed sell Yuyama

devices exclusively; any gain in sales or market share that might result from a Yuyama victory

could well be gained at the expense of other resold products. Certainly AutoMed has a less

direct stake in the outcome of this litigation than, for example, absent class members in a class

---

[2] A copy of this decision is attached to this Memorandum for the convenience of the Court.

action lawsuit, who are routinely protected from the costs of unreasonably burdensome discovery requests. *See generally* 32-21 Moore's Federal Practice - Civil 21.4 (2007).

Even if AutoMed were to receive some benefit from the settlement of the litigation or were able to bear the costs, that would not automatically subject them to unlimited discovery. The language of Rule 45 is "mandatory," and non-parties must be protected from unreasonable burden even where the subpoenaed party has significant financial resources. *In re Exxon Valdez*, 142 F.R.D. at 383 (requiring payment of 71% of costs even where subpoenaed party had significant resources and an actual interest in the outcome of the litigation).

The *Exxon Valdez* case also clearly involved significant public importance, as did the case of the Lockerbie terrorist bombing; in both cases, however, the Court held that it would be equitable to require the litigating parties to bear at least some of the costs of third-party discovery. *Id.*; *In re Law Firms of McCourts and McGrigor Donald*, 2001 WL 345233 (S.D.N.Y. Apr. 9, 2001). JVM has shown no equivalent public importance in this case.

## B.    The Burden on AutoMed of Complying with the Subpoena Would Be Significant

This Court has also chastised a party seeking to enforce a subpoena for "deal[ing] with the question of undue burden by essentially ignoring its existence," describing this strategy as "pointless." *Amerigroup*, 2005 WL 3111972, at *5. JVM has followed this "pointless" strategy, simply asserting that there would be no undue burden or expense, then proceeding to discuss other matters as though they are dispositive without the need to address burden at all. (JVC Mem. at 5).

In fact, there would be an obvious and significant burden involved with retrieving and reviewing hundreds of boxes of unindexed, fifteen-year-old paper records. (Gilbert Decl. at ¶¶ 3-7). Because the document requests made by JVM in its subpoena are extremely broad,

-6-

requesting "[c]opies of all documents concerning any automated medication packaging system manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd.," it is likely that a substantial portion of these documents would be responsive to the requests and that the costs of copying, review for privilege, and production would also be significant.[3]  (Gilbert Decl. at ¶ 7).

The fact that JVM has offered an intrusive and unacceptable solution to the problem does not eliminate the need to examine the burden.  *Amerigroup*, 2005 WL 3111972 at *4.  JVM's offer to perform the discovery itself is unacceptable from both a practically and legal standpoint. Allowing representatives of AutoMed's competitors unfettered access to its files for the last thirteen years, including legal files and privileged materials, is not only clearly unacceptable from a business perspective, it is prohibited by the Federal Rules, which state that a Court "shall" quash a subpoena if it "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(c)(3)(iii).  This Court should not enforce JVM's "compromise" and allow its attorneys unlimited access to AutoMed's records, including any privileged documents.  Even were this an option, JVM's request for a deposition covering all of the documents collected would mean that AutoMed would still be subject to significant costs to review the documents and prepare a witness.

Because JVM waited seven months to respond to AutoMed's production and objections and to begin the meet-and-confer process, its need for the documents is now time-sensitive and as a result, the cost and burden of compliance will only increase.  By failing to take even the simple step of responding to AutoMed in a timely manner, JVM demonstrated both the low priority it clearly places on these documents and its own disregard for its duty under Rule 45 to minimize the burden on AutoMed as a non-party.  JVM has continued to show the same

---

[3] In the correspondence between the parties, provided to the Court by JVM, JVM's counsel incorrectly claims that JVM has requested documents "for only two years (namely, 1994 and 1995)." In fact, the quoted request explicitly states that documents from those years are included "without limitation" in a general request for "all documents".

disregard for Rule 45 throughout the meet-and-confer process, refusing to clarify, reduce, or otherwise mitigate the extremely broad scope of its subpoenas or even to recognize that the Federal Rules require it to make any effort to do so.

AutoMed has already complied with the Subpoenas, at its own expense, where the burden imposed was not unreasonable; that is, where the documents could be produced from current files without searching fifteen years' worth of unindexed, warehoused documents. If JVM seeks to impose additional burdens on this non-party, it should be prepared to bear a significant share of the costs.

## C.　　The Burden to AutoMed is Not Balanced By Any Benefit to JVM

This burden is especially egregious in the instant case because JVM's subpoena, which it now seeks to enforce, is not narrowly drawn to encompass only those documents relevant to its case and to minimize the burden on AutoMed, in accordance with JVM's duties under Rule 45. As a result, there is unlikely to be any benefit to JVM that would counterbalance the burden imposed on AutoMed.

Because a manual review of the boxes stored in the warehouse in question would itself be the primary burden in this case, AutoMed has not reviewed these documents and does not know their exact contents, or even whether they contain any responsive documents. Because of the extremely broad nature of the requests, they are likely to contain at least some documents responsive to the requests. For the same reason, however, most of those documents are likely to be of marginal relevance at best to the underlying lawsuit. Yuyama has brought a patent infringement lawsuit seeking to recover its lost profits. AutoMed has not sought to recover anything from JVM, and information on its sales, profits, and marketing are for the most part simply irrelevant to this analysis.

Furthermore, many of the documents that would be responsive to the request should be available from Yuyama, a party to the underlying suit. Given the fact that discovery was available from Yuyama under Rule 26, the vast majority of the documents requested by JVM are duplicative of those that should have been as available from Yuyama as from AutoMed, and JVM has made no showing that discovery from Yuyama was inadequate or unavailable. To the extent that JVM is interested in Yuyama's lost profits, for example, the relevant information is not AutoMed's sales but Yuyama's sales. To the extent that patent marking is at issue, Yuyama, the patent holder and the party who would be responsible for any marking, is again the relevant party. There can be no purpose in requiring AutoMed, rather than Yuyama, to produce Yuyama product manuals, catalogs, marketing materials, or sales orders.

If these documents were not gathered from Yuyama during the party production, AutoMed should not bear the cost of JVM's failure to do so. Therefore, AutoMed asks that the Court quash JVM's subpoena seeking document discovery or, in the alternative, that the Court condition its enforcement on JVM's payment of AutoMed's reasonable costs of compliance.

**D.**    **JVM Has Failed to Present A Reasonable Basis For The Deposition of an AutoMed Representative**

The Subpoenas also seek the deposition of a corporate representative of AutoMed under Fed. R. Civ. P. 30(b)(6). It is not true, as JVM alleges, that AutoMed "insists on a deposition on written questions rather than an oral deposition." ( JVM Mem. at 7). The reason AutoMed proposed a deposition on written questions as a compromise during the meet-and-confer process is that the subpoena presented by JVM was unduly burdensome on its face and JVM has consistently failed, despite repeated requests, to provide a realistic list of topics that would allow AutoMed to effectively prepare a 30(b)(6) witness.

The subpoena dated March 26, 2008 purports to seek deposition testimony. However, the list of alleged deposition topics simply repeats the list of document requests from the May 2007 subpoena, almost word for word, but with phrases such as "Copies of" and "Copies of documents sufficient to show" omitted. (Roh Decl., Ex. B, C). As a result, the requests simply do not make sense as deposition topics.[4] For example, the first category for which testimony is requested is:

> Each of Your sales of any Automated Dispensing System sold from January 1, 1993 through December 15, 1996 and from September 7, 1998, through the present, including but not limited to, purchase orders, bills of lading, receipts, billing statements, invoices, memorandum [sic], and reports. For each machine, responsive information shall include, without limitation, information sufficient to identify: customer name, customer address, sale date, sale price, machine make and model, machine serial number and all accessories (whether consumable, spare part, individual medication dispensing cassette or otherwise) sold with each machine.

Similarly, category nine requests testimony on "Any Automated Dispending [sic] System, including without limitation" machines sold during certain dates.

In other words, JVM has requested a corporate representative who is familiar with, and able to intelligently testify regarding, almost every aspect of the company's automated dispensing business for the last fifteen years, including the minutiae of each individual sale and all aspects of the company, from sales (requests 1 through 4) to marketing (requests 5 and 6) to legal matters (requests 7 and 10) to management and accounting (request 8). Preparing a witness or witnesses to testify on the entire scope of JVM's subpoena by doing anything but reading what appears on the face of the documents would be incredibly burdensome if not impossible. This preparation, as well as the deposition itself, would then be a waste of time for all parties, as the

---

[4] The only two deposition categories that are not simply copied and pasted from the previous subpoena are number 10, which requests information on the patent marking of Yuyama and other automated dispensing systems (a subject on which AutoMed, which is not the patent holder and performs no patent marking, has no knowledge), and number 11, which seeks information on the document production itself.

volume of information requested simply could not be covered in the course of a seven hour deposition and would in any case be available from the documents themselves.

Despite repeated requests, JVM has refused to provide any indication of what topics would actually be covered at such a deposition, or even of why a deposition of non-party AutoMed would be needed at all. Even in its Memorandum, JVM merely states that it seeks information "concerning information not contained the documents produced by Automed" [sic] and "to allow for follow-up questions." (JVM Mem. at 3). There is no indication of what information is actually sought or why it is relevant to JVM's case.

All of the considerations relevant to the document requests also apply to the requested deposition testimony. The request is broad and burdensome, and JVM has refused even to acknowledge this burden, instead simply insisting on its right to "make[] the choice of various discovery procedures" regardless of burden. (JVM Mem. at 7).

Meanwhile, JVM has failed to show the relevance of most if not all of the material to its case in the underlying litigation or why, if any information is relevant, it could not have been gathered from party witnesses instead of non-parties. In fact, JVM did not serve its subpoena for a Rule 30(b)(6) deposition of an AutoMed representative until after its request for an additional Rule 30(b)(6) deposition of Yuyama was denied by the Court as "untimely". (Hapka Decl., Ex. 2). JVM's failure to obtain any relevant information from Yuyama itself cannot justify imposing this burden on a non-party instead.

Even if third-party discovery was required, JVM has already subpoenaed Duane Chudy, the founder of Automed and a former employee, who was President of the company during the years of 1994 and 1995, who JVM's own attorneys describe as "one of the most knowledgeable people in [the] industry about various aspects and types of tablet feeder machines." (Roh Decl.

at ¶ 7).  Contrary to JVM's allegations, (JVM Mem. at 3-4), Mr. Chudy has in fact already agreed to appear for a deposition, subject to an agreement on scheduling a date.  (Hapka Decl. at ¶ 5).  If JVM seeks testimony about events that took place during this time, a deposition of an AutoMed representative would be both useless, because AutoMed has no witnesses competent to testify on this point, and duplicative of the testimony of Mr. Chudy, who had the most relevant personal experience with the company during the relevant time period.  (Gilbert Decl. at ¶ 8).

## 4.  CONCLUSION

For the reasons given above, JVM's Motion to Enforce Subpoenas should be denied, AutoMed's Cross-Motion to Quash or, in the alternative, Modify the subpoena seeking deposition testimony should be granted, and both subpoenas should be quashed, or, in the alternative, modified to reduce the burden and expense of AutoMed's compliance.


AutoMed Technologies, Inc.


By:      /s/Jacqueline A. Criswell
              One of Its Attorneys


Jacqueline A. Criswell
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower - 22nd Floor
233 South Wacker Drive
Chicago, IL 60606
312/627-4000
312/627-1717 (fax)

## CERTIFICATE OF SERVICE

I hereby certified that, on this 9th day of May, 2008, the foregoing Non-Party AutoMed's Memorandum in Opposition to JVM's Motion to Enforce Subpoenas and in support of its Cross-Motion to Quash or Modify JVM's Subpoena Seeking Deposition Testimony, was served by electronic filing on:

Ronald Austin, Jr.
**BROTHERS & THOMPSON, P.C.**
100 West Monroe Street, Suite 1700
Chicago, Illinois 60603
ra2law@cs.com

**and via mail:**

Tortsten M Kracht
Michael A. O'Shea
Akin Gump Strauss Hauer and Feld LLP
1333 New Hampshire Ave NW
Washington, DC 20036
*Counsel for Yuyama Manufacturing Co. Ltd. and Duane Chudy*

John D. Simmons
Panitch Schwarze Belisario & Nadel LLP
2005 Market St., Suite 2200
Philadelphia, PA 19103
*Counsel for Yuyama Manufacturing Co. Ltd. and Duane Chudy*

_____ /s/ Gina Flaum _____

-2-

Not Reported in F.Supp.2d                                                         Page 1
Not Reported in F.Supp.2d, 2005 WL 3111972 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 3111972)**

**H**
U.S. v. Amerigroup Illinois, Inc.
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois.
UNITED STATES of America, State of Illinois, ex
rel., and Cleveland Tyson, Plaintiffs,
v.
AMERIGROUP ILLINOIS, INC., and Amerigroup
Corporation, Defendants.
**No. 02 C 6074.**

Oct. 21, 2005.

Michael I. Behn, Behn & Wyetzner, Michael
Charles Rosenblat, Michael E. Rosenblat, P.C.,
Paul Joseph Gaynor, Chaka M. Patterson, David
Jamison Adams, Tyree L. Givens, Illinois Attorney
General's Office, Paul Joseph Gaynor, Chaka M.
Patterson, Illinois Attorney General, Joan Matlack,
Putterman & Howard, Marla Helene Swartz, Mi-
chael Keyes Hendershot, Frederick H. Cohen, Chad
A. Blumenfield, David Joel Chizewer, Hillary
Levitt Dunn, Goldberg, Kohn, Bell, Black, Rosen-
bloom & Moritz, Ltd, Michele Marion Fox, United
States Attorney's Office, NDIL, William W.
Thomas, Futterman & Howard, Chtd ., Chicago, IL,
for Plaintiffs.
Daniel John Voelker, Andrew C. Nordahl, Cather-
ine A. Miller, Daniel Charles Curth, Hillard M.
Sterling, Jeffrey Lawrence Dorman, Freeborn &
Peters, Kellye L. Fabian, Kirkland & Ellis LLP
(Chicago), Michele Marion Fox, United States At-
torney's Office, NDIL, Robert A Barba, Illinois At-
torney General's Office, Chicago, IL, for Defend-
ants.

### MEMORANDUM OPINION AND ORDER

Jeffrey Cole, United States Magistrate Judge.
*1 The Illinois Department of Healthcare and Fam-
ily Services ("HFS"), has moved to quash a sub-
poena *duces tecum* served on it by the defendants
calling for production of emails of three named

HFS employees on the ground that compliance with
the subpoena would be unduly burdensome-espe-
cially given the fact that HFS is not a party to the
case.

### I

### BACKGROUND

### A

### The Underlying Complaint

Relator, Cleveland Tyson, filed this *qui tam* suit un-
der the False Claims Act ("FCA"), 31 U.S.C. §§
3729*et seq.* and Illinois Whistleblower Reward and
Protection Act ("Illinois Whistleblower Act").740
ILCS §§ 175/1*et seq.*[FN1] The FCA establishes civil
penalties for any person who files "a false or fraud-
ulent claim for payment or approval" by the United
States government. 31 U.S.C. § 3729(a)(1). The
provisions of the IWRPA are similar. 740 ILCS §
175/3. The State of Illinois intervened in the suit on
March 2, 2005; the United States was just granted
leave to intervene on October 17, 2005.

> FN1. The term, *qui tam,* comes from the
> Latin expression, *qui tam pro domino rege
> quam pro se ipso in hac parte sequitur*
> ("Who brings the action for the King as
> well as for himself").*United States ex rel.
> Mathews v. Bank of Farmington,* 166 F.3d
> 853, 857 (7th Cir.1999). In a *qui tam* ac-
> tion, a private party, the "relator," brings
> an action to redress fraud upon the govern-
> ment. *Id.* If the claim is proven, the relator
> receives a percentage of the recovery ran-
> ging, under the current statute, from 10%
> to 30%. *Id.* at 857-58 (*citing*31 U.S.C. §
> 3730(d)).*See Vermont Agency of Natural
> Resources v. United States ex rel. Stevens,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3111972 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 3111972)**

529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). The history of the False Claims Act is detailed in *United States ex rel. S. Prawer and Co. v. Fleet Bank of Maine,* 24 F.3d 320, 324 (1st Cir.1994).*See also United States ex rel. Williams v. NAC Corp.,* 931 F.2d 1493, 1496-98 (11th Cir.1991).

The second amended complaint alleged that under its contract with the Illinois Department of Public Aid-now known as HFS-Amerigroup Illinois ("AMG-IL") was required to submit quarterly statements certifying that, to its knowledge, there had been no fraud, abuse, or misconduct on the part of its employees, providers, or representatives. The contract defined "abuse" as "a manner of operation that results in excessive or unreasonable costs to the Federal and/or State health care programs."(*Second Amended Complaint,* Ex. A, at 2). The Second Amended Complaint alleges that AMG-IL did not report its limited enrollment practices in its quarterly certifications, which were a precondition to its receiving payment from the federal and state programs involved. This omission allegedly resulted in and constituted false or fraudulent claims for payment in violation of the applicable statutes.

**B**

**The Present Discovery Dispute**

On July 29, 2005, defendants served a subpoena on HFS, calling for the production of twelve categories of materials. It was the third in a series of substantially similar subpoenas, the first two having been the subject of successful motions to quash by HFS.FN2 On August 11, 2005, HFS moved to quash the subpoena as to all but two of the categories-Nos. 5 and 11-on three grounds: that service was defective under the plain language of Fed.R.Civ.P. 45(b)(1); that the documents sought were not relevant; and that the subpoena was unduly burdensome to a non-party under Fed.R.Civ.P.

45(c)(3)(A)(iv). In the alternative, HFS sought a protective order that no discovery be had aside from discovery bearing on the calculation of damages. Defendants filed their response to HFS's motion on August 18, 2005.

> FN2. The defendants have filed objections to those two prior rulings under Fed.R.Civ.P. 72(a), which are currently pending before Judge Leinenweber.

I convened a hearing on this matter on August 23rd and 24th of 2005. In those two sessions, lengthy conferences were conducted in open court, and many of the disputed issues relating to the instant motion, as well as to another discovery dispute, were resolved. In the end, the parties were able to reach a voluntary agreement as to all but two of the document categories, Nos. 6 and 7. The resolution of their dispute as to category No. 6 was held in abeyance at my request. Document category No. 7, which relates to the production of emails of HFS personnel, remains in dispute, and it is the category that is presently the subject of HFS's motion to quash.

**\*2** The defendants have agreed to limit their request to the emails of Lucille Rendok and Kelly Carter, who are currently HFS employees, and Nelly Ryan, a former employee. In addition, the defendants have agreed that HFS may limit the search terms to be used in retrieving the desired emails to: (1) adverse select\*, cherry, pregnan\*, trimester, discriminate\*, and/or continuity of care; combined with (2) some reference to Amerigroup, such as Amerigroup or AMG. HFS-still unhappy with the request-filed its reply brief on September 14, 2005.

HFS maintains that the current version of the subpoena must still be quashed under Rule 45(c)(3)(A)(iv) because the defendants' request is unduly burdensome, and the emails are irrelevant and unlikely to lead to the discovery of admissible evidence. The defendants' position consists largely of the unadorned conclusion that the burden is not undue and that the emails are critical to proving

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2005 WL 3111972 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 3111972)**

that HFS had knowledge of the claimed illegality, which HFS insists is at least a *pro tanto* defense to the claimed fraud.

## II

## ANALYSIS

## A

### Undue Burden Within The Meaning Of Rule 45(c)(3)(A)(iv) And The Protections Accorded Non-Parties

Rule 45(c)(3)(A)(iv) mandates that a court "shall quash or modify" a subpoena if it "subjects a person to undue burden."The Advisory Committee's Notes to the 1991 amendments to Rule 45 make clear that the amendments have "enlarge[d] the protections afforded persons who are required to assist the court by giving information or evidence."The rule "requires the court to protect all persons from undue burden imposed by the use of the subpoena power."*Id.* This is not the discretionary language of Rule 26(c), under which a court "may make any order which justice requires to protect a party or person from ... undue burden...." It is a "command[ ]." *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38, 41 (1st Cir.2003).

HFS submits that its system and attendant backup system do not even allow the retrieval of emails for the entire five-year period-2000 through 2004-specified in the subpoena. All that is available, according to HFS, is a year's worth of emails. But even that, HFS argues, would constitute an undue burden on it.

As the party objecting to the document request, HFS must demonstrate that the burden of producing the one year's worth of emails is undue. There must be affirmative and compelling proof. *Ipse dixits* will not suffice. *See Trading Technologies Intern..*

*Inc. v. eSpeed, Inc.,* No. 04 C 5312, 2005 WL 1300778, *1 (N.D.Ill. April 28, 2005)(Moran, J.); *Semien v. Life Insurance. Co. of North America,* No. 03 C 4795, 2004 WL 1151608, *1 (N.D.Ill. April 21, 2004)(Kocoras, J.); *In re Sulfuric Acid Antitrust Litigation,* No. 03 C 4576, 2005 WL 2403328, *9 (N.D.Ill. Sept.27, 2005)(collecting cases). HFS has provided such evidence in the form of the affidavit of a testimonially competent HFS employee. *See*Rule 602, Federal Rules of Evidence.

## B

### The Evidence In Support Of HFS's Motion Suffices To Carry Its Burden Of Proving That Production Of The One Year's Worth Of Emails Should Not Be Required

**\*3** In support of its contention that the document request is unduly burdensome, HFS has submitted the affidavit of Donald Perry, the chief of its bureau of information systems. (*Motion of Non-Party HFS to Quash a Subpoena for Documents,* Ex. H). Mr. Perry is familiar with HFS's email systems, as well as procedures for backing up email files and restoring old files. (*Id.,* Ex. H, at ¶ 2). The HFS email system comprises 23 post offices residing on specified servers. Each HFS employee is provided with an individual email account in the post office that is appropriate to their location. (*Id.,* Ex. H, at ¶ 3). The post offices are "backed up" incrementally on a daily basis, while a full back up of all the post offices is performed over the weekend. (*Id.,* Ex. H, at ¶ 4). The daily, incremental backup files are retained for one month; the weekly backup files are retained for one year. (*Id.,* Ex. H, at ¶ 5).

Mr. Perry's affidavit explains what would be involved in retrieving the old email files the defendants have requested. In order to restore an employee's email account, one begins with the data range and the employee's post office. The data range is limited to one year from the current date. Once provided with a data range and post office, HFS's

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3111972 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 3111972)**

Page 4

central management service can retrieve the appropriate back up tapes from an off-site storage facility and restore that entire post office to a dedicated server with restricted access. (*Id.,* Ex. H, at ¶ 6). At that point, the individual employee's email messages can be retrieved and analyzed to determine relevance. (*Id.,* Ex. H, at ¶ 7). According to Mr. Perry, however, a post office may only be restored one week at a time; if there are multiple weeks in the data range, the restoration process must be performed in stages. (*Id.,* Ex. H, at ¶ 8). During such a "staged retrieval process," a post office is restored for a period, analyzed, and then deleted to allow the next post office to be restored and analyzed. (*Id.,* Ex. H, at ¶ 9). This stored retrieval process is costly, in terms of expense, equipment, and manpower. (*Id.,* Ex. H, at ¶ 10). For example, a review of one year's worth of an employee's emails would take approximately six weeks.(*Id.,* Ex. H, at ¶ 10).

Significantly, the defendants do not challenge any of Mr. Perry's assertions. This omission, they claimed at oral argument, was the inevitable result of having no familiarity with the internal systems used at HFS. The argument is unpersuasive. The defendants could have sought leave to depose Mr. Perry, and, of course, they could have retained an expert of their own to opine on the validity of Mr. Perry's statements-at least in a general sense. Moreover, Mr. Perry's assessment is confirmed, in the main, by the cases, which have recognized that the task of restoring emails through the use of backup tapes is a "unique burden":

Backup tapes record a "snapshot" of the contents of the computer system at the moment the backup is run. "The data on a backup tape are not organized for retrieval of individual documents or files, but for wholesale, emergency uploading onto a computer system."In case the system "crashes," and all the information created since the previous backup is lost, the contents of the tape can be loaded onto the system, restoring the lost information. Since crashes presumably occur infrequently, backup tapes need not be as convenient to access as, say, a

CD-ROM. At the same time, backup tapes must have the capacity to store large amounts of information since they are relied upon to replace all the information contained on a computer system after a crash. It is understandable, then, that backup tapes sacrifice accessibility for storage capacity, since to have both would be impractical and costly.

**\*4** *Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.,* 222 F.R.D. 594, 600 (E.D.Wis.2004) (Citations omitted).

This is not to say that undue burden may be presumed simply because electronic evidence is involved. *Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 318 (S.D.N.Y.2003). But, in the hierarchy of accessibility, it is clear that electronic data stored on media such as the backup tapes involved here is near the bottom. *Id.* at 319.One of the reasons for the difficulty involved in searching backup tapes is that they store infinitely more information than most other storage media. For example, a CD-ROM's storage capacity is 650 megabytes, the equivalent of 325,000 typewritten pages. Computer networks, on the other hand, create backup data measured in terabytes-1,000,000 megabytes-which is the equivalent of 500 billion typewritten pages. Manual for Complex Litigation (Fourth) § 11.446 (2004) (*cited in**Hagemeyer,* 222 F.R.D. at 601).

It is not a decisive answer to say that the defendants have offered pay the costs that might be incurred in retrieving the emails. Expense is but a part of the burden. As Mr. Petty's uncontested affidavit indicates, the process of retrieving the emails also entails the extensive use of equipment and internal manpower. It will take six weeks to restore and review the data of just one of the three individual's email accounts. The entire project, then, will entail eighteen weeks of effort. To be sure, one can imagine the use of three dedicated servers to perform each of the six weeks of restoration work concurrently, but the end result is still eighteen weeks of manpower and eighteen weeks of use of the necessary equipment. That burden, which is undeniably substantial, exists independently of the monetary costs

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3111972 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 3111972)

entailed.

The defendants have dealt with the question of un-due burden by essentially ignoring its existence. This mode of dealing with potentially dispositive argument is as "pointless" as is ignoring potentially dispositive authority that is contrary to a party's po-sition. *Hill v. Norfolk & Western Ry. Co.,* 814 F.2d 1192, 1198 (7th Cir.1987); *Fred A. Smith Lumber Company v. Edidin,* 845 F.2d 750, 753 (7th Cir.1988). While ignoring the question of burdens, the defendants have not cited not a single case in which a non-party was subjected to the significant burden of restoring electronic data from backup tapes.

### C

### The Significance Of HFS's Non-Party Status

In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that "non-party status" is a significant factor to be con-sidered in determining whether the burden imposed by a subpoena is undue. *See North Carolina Right to Life, Inc. v. Leake,*-F.R.D.-, 231 F.R.D. 49, 2005 WL 2456982 (D.D.C. Oct.6, 2005); *Wyoming v. U.S. Dept. of Agriculture,* 208 F.R.D. 449, 452 (D.D.C.2002); *In re Automotive Refinishing Paint,* 229 F.R.D. 482, 495 (E.D.Pa.2005). As the First Circuit has explained:

*5 Although discovery is by definition invasive, parties to a law suit must accept its travails as a nat-ural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accord-ingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs.

*Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998)(Emphasis added). Here, the "unique burden" of restoring the email records and the "special weight" to be accorded HFS's non-party

status combine to require that the defendants' sub-poena be quashed under Rule 45(c)(3)(A)(iv).

Instead of focusing on the pivotal question of undue burden, the defendants attempt to demonstrate how relevant-i.e., how important-the emails are to HFS's possible knowledge and approval of the defendants' alleged fraud under the False Claims Act. Accord-ing to the defendants, HFS was aware of adverse selection and has allowed it to be a general part of the Medicaid program that it was charged with ad-ministering. (*Defendants' Response to Motion of Non-Party HFS,* at 13). As such, the defendants ar-gue that their request for the emails is critical to a "government knowledge" defense under *United States ex rel. Durcholz v. FKW, Inc.,* 189 F.3d 542 (7th Cir.1999).

There, the Seventh Circuit explained that, in order to prove an FCA violation, a relator must "produce evidence that [the defendant] knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval."*Id.* at 544 (*citing*31 U.S.C. § 3729(a)(1)). The court described the *mens rea* element as requiring "that the defendant have actual knowledge of (or deliberately ignore or act in reckless disregard of) the truth or falsity of the in-formation presented; no specific intent to defraud is required."189 F.3d at 544 (Emphasis in original). While the court noted that "[i]nnocent mistakes or negligence are not actionable," it also cautioned that "[w]hat constitutes the offense is not intent to deceive but knowing presentation of a claim that is either fraudulent or simply false."*Id.*

As for the "government knowledge" defense, the court held that: "[i]f the government knows *and ap-proves of* the particulars of a claim for payment be-fore that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim."*Id.* at 545 (Emphasis added). Despite the seeming clarity of the court's opinion, HFS and the defendants have very different interpretations of the opinion and of the elements of the defense. (*De-fendants' Response to Motion of Non-Party HFS,* at 13-14; *Reply Brief of the Non-Party HFS to De-*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3111972 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 3111972)**

*fendants' Response,* at 3-5). For the defendants, knowledge, *simpliciter,* is enough. Not surprisingly, HFS contends that there must have been approval by employees who had approval authority, not merely knowledge of what was going on. (*HFS Reply Brief* at 6). For the defendants, this sort of proof is irrelevant since they ignore the approval prong of the Seventh Circuit's opinion.

**\*6** Of course, it would be improper for me to make a determination about the ultimate merits of the controversy regarding the scope of the government knowledge defense since that issue is before Judge Leinenweber in the context of defendant's motion for summary judgment. But that does not mean that some cursory review is inappropriate for limited purposes. Compare *Von Drake v. National Broadcasting Co., Inc.,* No. 04-CV-0652, 2004 WL 1144142, \*2 (N.D.Tex. Mar. 29, 2004)(cursory review to determine whether defendants have substantial arguments for dismissal); *Pacific Lumber Co. v. National Union Fire Insurance. Co. of Pittsburgh, PA,* 220 F.R.D. 349, 352 (N.D.Cal.2003)(cursory review to determine whether motion will potentially dispose of entire case and whether pending motion can be decided absent additional discovery); *Chrysler Capital Corp. v. Century Power Corp.,* 137 F.R.D. 209, 209-10 (S.D.N.Y.1991)(cursory review to determine whether motion appears to have substantial grounds or does not appear to be without foundation in law); *Aura Lamp & Lighting, Inc. v. International Trading Corp.,* 325 F.3d 903 (7th Cir.2003); *Price v.Code-Alarm,* 73 Fed.Appx. 159, 161, 2003 WL 21750812 (7th Cir.2003); (Although a court of appeals lacked jurisdiction to decide the merits of a case over which there was no jurisdiction, it could nevertheless "take a peek" to see whether to transfer the case to the Federal Circuit or dismiss the appeal); *Philips v. Seiter,* 173 F.3d 609, 611 (7th Cir.1999).

Judge Cudahy was the author of the opinion in *Durcholz.*On the panel were Judges Posner and Rovner. The Court of Appeals' conjunctive phrasing-"if the government knows *and* approves"-would appear to have been purposeful and intended to signal that mere knowledge alone of illegality would not enable those who defraud the government from being able to draw a conjurer's circle around their illegality and insulate themselves from condign punishment. Any other reading would make the conjunctive phrasing superfluous. The defendants have not paused to analyze the matter in any depth; they have merely quoted the text of the opinion. HFS, relying on the identical language quoted by the defendants, stressed the conjunctive phrasing and, in addition, adverted to the doctrine that prohibits, in most cases, estoppel against the government.

The inappropriateness of my deciding the issue presently before Judge Leinenweber is further underscored by the fact that the Relator and the State of Illinois have not briefed the government knowledge issue in connection with the present motion, involving as it does, a non-party. Consequently, any expression of ultimate opinion on the government knowledge defense would not only be unfair, but would necessarily be uninformed, as parties with a significant interest in the proper resolution of the question have not had an opportunity to express themselves. *Cf. Adamson v. California,* 332 U.S. 45, 59 (1946) (Frankfurter, J., concurring) ("the judicial process [is] at its best" only when there are "comprehensive briefs and powerful arguments on both sides...."); Brandeis, The Living Law, 10 Ill. L.Rev. 461, 470 (1916)("A judge rarely performs his functions adequately unless the case before him is adequately presented.").

**\*7** On the state of the present record, the following seems beyond debate: the burden on HFS to produce the requested emails is substantial and undue, while the claimed criticality of the emails is anything but certain, given the polar positions on the question by HFS and the defendants and the unresolved nature of the issue of the contours of the government knowledge defense. But even if it be conceded that the emails are "potentially germane"

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3111972 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 3111972)

Page 7

to the that defense, the significant and undue burden on HFS precludes production. *See Heidelberg Americas.* 333 F.3d at 41. In *Heidelberg,* for example, the First Circuit upheld the district court's quashing of a subpoena to a non-party and, in so doing, noted that:

some considerable question exists as to how discovery of the materials would lead to admissible evidence. In other words, the documents are not obviously, and perhaps not even reasonably, calculated to lead to other discoverable materials ... The burden on the non-party ..., by contrast, appears to be significant.

*333 F.3d at 41.*

Here, too, the subpoena is significantly burdensome, and there is a question as to the claimed criticality of the emails: When the defendants filed their motion for summary judgment in December 2004, they were obviously satisfied that the evidentiary record they had compiled was sufficiently comprehensive and compelling that there were no disputed issues of material fact on the question of the government knowledge defense. In the intervening eleven months, the defendants have been content to rely on the record submitted to the district court. Yet, in this court, they now insist that the emails are indispensable to the defense that they thought was so straightforward and uncompromising in their favor that they were entitled to judgment as a matter of law under Rule 56. The tension between the current claim in this court that the evidence is so critical that any burden that the non-party HFS must endure is outweighed by the need for the evidence and the position taken in the summary judgment motion is as irreconcilable as it is obvious. In short, while the evidence sought may be relevant, on the present record, the efforts required for its production would be unduly burdensome, especially given HFS's non-party status, and the unresolved issue of the scope of the government knowledge defense.

For the foregoing reasons, the motion of non-party

Illinois Department of Healthcare and Family Services to quash the defendants' subpoena [267] as to document category No. 7 is GRANTED.

N.D.Ill.,2005.
U.S. v. Amerigroup Illinois, Inc.
Not Reported in F.Supp.2d, 2005 WL 3111972 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
------------------------------------------------------------------x
                                            :
YUYAMA MANUFACTURING CO. LTD.,              :
                                            :
            Plaintiff,                      :
                                            :
                                            :   Case No. 08-cv-2523
    v.                                      :
                                            :   Judge Kennelly
JVM CO., LTD,                               :
                                            :   Magistrate Judge Cole
            Defendants                      :
                                            :
                                            :
                                            :
------------------------------------------------------------------ x
```

DECLARATION OF PETER GILBERT

PETER GILBERT, in support of the Motion of AutoMed Technologies, Inc. ("AutoMed") to quash the subpoena sought by JVM Co., Inc. ("JVM"), and in opposition to JVM's Motion to Enforce Subpoenas, declares as follows:

1. I am the GVP of Operations of AutoMed Technologies, Inc., a non-party in the underlying litigation.

2. All documents from before the year 2000 sought by JVM in their subpoenas served in this matter are stored in a single storage location in AutoMed's principal business office (the "Mezzanine").

3. There are hundreds of boxes of records and documents stored in the Mezzanine.

4. While some individual boxes are labeled with a general indication of their contents, there is no index or other finding aid available to the document boxes stored in the Mezzanine.

5. The production of "[c]opies of all documents concerning any automated packaging system manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd." and stored in the Mezzanine would require that someone examine the contents of each individual warehoused box.

6. Without having personally examined the contents of each individual box, it is my opinion that JVM's request for "[c]opies of all documents concerning any automated packaging system manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd." would encompass a substantial portion of the documents stored in the Mezzanine.

7. Reviewing, copying, and producing "[c]opies of all documents concerning any automated packaging system manufactured in whole or in part, or sold by, Yuyama Manufacturing Co., Ltd." that are stored in the Mezzanine would require the review of hundreds of boxes of archived documents and would impose a significant burden on AutoMed.

8. No employee currently employed by AutoMed is knowledgeable regarding, or could testify regarding, the information requested by JVM in

its subpoenas for transactions taking place in the year 1995 or before.

9.  AutoMed has no financial interest in the ongoing patent litigation

between JVM and Yuyama.

10. JVM is a competitor of AutoMed and allowing representatives of JVM

access to AutoMed's documents, including potentially privileged

documents, would endanger AutoMed's business interests.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on _Aug 9_, 2008



_____

Peter Gilbert

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
-------------------------------------------------------------------x
                                                          :
YUYAMA MANUFACTURING CO. LTD.,                            :
                                                          :
              Plaintiff,                                  :
                                                          :
       v.                                                 :    Case No. 08-cv-2523
                                                          :
JVM CO., LTD,                                             :    Judge Kennelly
                                                          :
              Defendants                                  :    Magistrate Judge Cole
                                                          :
                                                          :
                                                          :
                                                          :
-------------------------------------------------------------------x
```

## DECLARATION OF CHRISTOPHER HAPKA

CHRISTOPHER HAPKA, in support of the Motion of AutoMed Technologies, Inc. ("AutoMed") to quash the subpoena sought by JVM Co., Ltd. ("JVM"), and in opposition to JVM's Motion to Enforce Subpoenas, declares as follows:

1. I am an attorney with the law firm of Buchanan Ingersoll & Rooney PC.

2. Buchanan Ingersoll & Rooney PC represents non-parties AutoMed in connection with this matter, and I have been actively involved with this representation.

3. Attached as Exhibit 1 to this Declaration is a true and correct copy of a letter, dated April 1, 2008 but actually transmitted on April 9, 2008, regarding the subpoenas at issue in this case. This letter represents the first communication by JVM regarding AutoMed's responses and objections to the March 23, 2007 subpoena.

4. Attached as Exhibit 2 to this Declaration is a true and correct copy of a
   Letter Order issued by the Magistrate Judge in the underlying litigation
   in this case.

5. I have spoken with counsel for Mr. Duane Chudy, who has assured me
   that his client has agreed to be deposed by JVM subject to the parties'
   ability to agree on a date.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on 9 MAY, 2008



Christopher Hapka

# Exhibit 1

 **LAW FIRM**
A PROFESSIONAL CORPORATION

TEL 213 389 7777   FAX 213 389 3377   3255 Wilshire Blvd  11th Fl Los Angeles, CA 90010
WEB www.parklawfirm.com   KOREAN WEB www.parklaw.com   EMAIL firm@parklaw.com

April 1, 2008

**Via Email: jsturz@amerisourcebergen.com**
**Confirmation by: U.S. Mail**

Mr. Jonathan R. Sturz
AmerisourceBergen Corporation
1300 Morris Drive
Chesterbrook, PA 19087

Re:     **Yuyama Manufacturing Co., Ltd. v. JVM Co., Ltd.**

Dear Mr. Sturz:

This letter relates to the subpoena of Automed scheduling a deposition for April 18, 2008 (served on March 31, 2008), and the subpoena of AmerisourceBergen scheduling a deposition for April 22, 2008 (served on April 4, 2008), as well as subpoenas requesting document production (dated May, 2007).

As circumstances presently stand, we intend to go forward with the depositions on the scheduled dates, as noticed, and, if necessary, to continue that deposition until we obtain a ruling on a motion by JVM to compel the production of documents requested in the May, 2007 subpoenas. JVM may be willing to move the deposition date to a later date, if that would facilitate production of responsive documents at least two days before the deposition, in order to avoid the necessity of a continuance.

Please let us know how Automed wishes to proceed.

Sincerely,

PARK LAW FIRM

Chong H. Roh

CR/mc

CR2Sturz-20080409

Exhibit 2

# UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

CHAMBERS OF
JAMES K. BREDAR
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0950
(410) 962-2985 FAX

January 16, 2008

TO ALL COUNSEL OF RECORD

      Subject:  *Yuyama Manufacturing Co., Ltd. v. JVM Company, Ltd.*
               Civil Action No. MJG-06-2536

Dear Counsel:

      This case has been referred for disposition of discovery disputes.  Counsel have sent to the Court a series of letters (Paper Nos. 54, 56 and 57) concerning a proposed increase in the current limit of deposition hours permitted pursuant to the Scheduling Order put into place on February 13, 2007 (Paper No. 20).

      The first letter, from the plaintiff, seeks an increase from 80 hours to 110 hours so that it can depose defendant's non-party distributors.  The response from the defendant agrees to the increase in allotted hours, but conditions its agreement upon its demand for the inclusion of time to reopen its deposition of the plaintiff pursuant to Fed. R. Civ. P. 30(b)(6), a condition that the plaintiff opposes.  Running in the background behind this relatively simple dispute over deposition hours is a very untimely dispute over the earlier Rule 30(b)(6) deposition of the plaintiff, which apparently took place in October of last year.  It appears to the Court as if the defendant is seeking to use the need of both parties for more deposition time as a lever to pry open an issue that it has waived.

      The parties each will be allowed a total of 110 hours for depositions.  The defendant is not permitted to reopen the Rule 30(b)(6) deposition of the plaintiff.

      This letter is an Order and will be docketed accordingly.

                        Very truly yours,

                        /s/

                        James K. Bredar
                        United States Magistrate Judge

JKB/cw
cc: The Hon. Marvin J. Garbis
      Court file
      Chambers file

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YUYAMA MANUFACTURING CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  08 CV 2523 |
| v. | ) | |
| | ) | Judge Kennelly |
| JVM CO., LTD., | ) | |
| | ) | Magistrate Judge Cole |
| Defendant. | ) | |

**ORDER**

**AND NOW**, this _____ day of _____, 2008, upon consideration of the Motion to Enforce Subpoenas filed by JVM Co., Ltd., and any response thereto, and the cross-motion of non-party AutoMed Technologies, Inc., it is hereby **ORDERED** and **DECREED** that JVM's Motion is **DENIED** and AutoMed's motion is **GRANTED**; that the Subpoenas issued by JVM to non-party AutoMed Technologies, Inc. seeking deposition testimony are **QUASHED** or **MODIFIED** such that any deposition may be taken only under terms agreed by both parties or set by the Court; and that any production of additional documents by AutoMed is conditioned on JVM's agreement to pay for the reasonable costs of production.

**BY THE COURT:**

_____